# Joint Appendix 3

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA
United States Court of Appeals Case No. 20-6034
FOURTH CIRCUIT

Joint Appendix in attachment to Informal Brief in "No. 20-6034, US v. Brian Hill "

In the United States District Court
For the Middle District of North Carolina

Brian David Hill,                    )
Petitioner/Defendant                 )
                                     )
                                     )   Criminal Action No. 1:13-CR-435-1
v.                                   )
                                     )   Civil Action No. 1:17-CV-1036
United States of America,            )
Respondent/Plaintiff                 )
                                     )
                                     )

**PETITIONER'S SECOND MOTION FOR SANCTIONS AND TO VACATE
JUDGMENT THAT WAS IN PLAINTIFF'S/RESPONDENT'S FAVOR**

**MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF
REQUESTING THE HONORABLE COURT IN THIS CASE VACATE
FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS**

NOTICE: Due to the Motion to "Disqualify/Recuse Judge — Document #195" and appeal of his
decision not to recuse himself, in regards to the Hon. Judge Thomas D. Schroeder, this motion
should not be decided by that Judge but should be tried by another Judge of the bench. Due to the
facts and allegations inside of this motion, it would be a conflict of interest for Judge Schroeder
to render any decision on this motion.

Pursuant to the inherit power or implied power of the U.S. District Court (Courts §
18 - inherent or implied powers, Chambers v. NASCO, Inc., 501 U.S. 32, 44
(1991), Courts § 225.1; Equity § 47 - power to vacate fraudulent judgment) (See
**Supplement 1 — Document #199, Attachment #1 ECF No. 199-1**), the
Defendant/Petitioner Brian David Hill ("Brian D. Hill", "Hill", "Brian",
"Defendant", "Petitioner"), proceeding Pro Se in this action, respectfully requests
that the Honorable U.S. District Court vacate a fraudulently begotten judgment, the
Document #200, filed: October 7, 2019, and the oral judgment on September 12,

1

2019 finding the Defendant/Petitioner in violation of Supervised Release conditions, that the Defendant/Petitioner be sentenced to nine (9) months imprisonment, and that nine (9) years Supervised Release be re-imposed. On the basis of fraud upon the court, such judgment should be vacated.

Defendant/Petitioner plans to file a third motion for sanctions after reviewing over the transcript of the September 12, 2019 hearing. Brian also plans on filing a final motion for sanctions for the 2255 motion to be given default judgment in favor of Defendant/Petitioner on the ground of actual innocence as that is not subject strictly to the one year statute of limitations under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), and a judgment rendered on the basis of fraud upon the court by the adverse party is not a final judgment and can be subject to collateral attack upon proving intrinsic and/or even extrinsic frauds upon the court by the adverse party (See **Supplement 2 — Document #199, Attachment #2, ECF No. 199-2**)

The U.S. Probation Office in Greensboro (the petitioner for revocation) and represented through the United States Attorney Office for the Middle District of North Carolina had petitioned for revocation back in November 13, 2018 on issues that are based on perjury and/or subornation of perjury which is a fraud upon the court, and that such a basis had lacked merit. Their entire position lacks merit.

Defendant/Petitioner can no longer stand by and allow any more lies to be used against Brian David Hill by law enforcement and by the corrupt U.S. Probation office in Greensboro, North Carolina and by the Assistant United States Attorney Anand Prakash Ramaswamy. Brian is requesting that the fraud be addressed, vacated as a matter of right of the Court through it's inherit powers, and punish those who had engaged in the fraud against the Court and sanction them for the fraud or frauds against Defendant/Petitioner.

2

Defendant/Petitioner would like to request sanctions against the
Government/Respondent/Plaintiff counsel Assistant U.S. Attorney ("AUSA")
Anand Prakash Ramaswamy at the Greensboro, NC Office, Kevin M. Alligood
(U.S. Probation Officer Specialist), and Edward R. Cameron (Supervisory U.S.
Probation Officer). The sanctions are on the basis of the fraud upon the court. The
fraud is the perjury of U.S. Probation Officer Specialist ("USPOS") Kevin M.
Alligood ("Kevin") in the Petition for Warrant or Summons for Offender Under
Supervision (See Petition under Document #157, ECF No. 157). Also the false
statements of USPOS Kevin that ended up as statements carried under penalty of
perjury as stated in the Petition for revocation under Order for Warrant —
Document #157, was approved by Supervisor Edward R. Cameron.

These are not the full facts of fraud upon the court as Brian is still awaiting the
Transcript to challenge the final revocation judgment on appeal. Once the
transcript is acquired, more inquires will be conducted of the fraud upon the court
by the adverse party counsel AUSA Ramaswamy and be documented and then a
final motion for sanctions. This final motion for sanctions will be filed not just
asking for the final judgment for the Supervised Release Violation under Doc.
#200 to be vacated, but also a request for default judgment for Brian's 2255
Motion (Document #125) as a matter of law (actual innocence exception) and for
the basis of the Government's repeated pattern of fraud upon the court which
invalidates any final judgments and therefore are not final judgments that can
shielded from any collateral attack. Brian will soon request permanent relief from
the final conviction and all judgments against Brian and wants this wrongful
conviction overturned once and for all. Attorney Renorda Pryor does not represent
Brian's 2255 case and is not reportedly counsel for the 2255 case, so any motions

3

for that case are not under Renorda's jurisdiction, but under Brian's pro se jurisdiction.

### FACTS THAT REPRESENT THAT THERE ARE STATEMENTS OF PERJURY IN DOCUMENT #157 PETITION FOR WARRANT AND THAT SUCH PERJURY STATEMENTS REPRESENT A FRAUD UPON THE COURT BY THE U.S. PROBATION OFFICE

"According to the police report, on the night of September 21, 2018, a report was received that a nude male had been observed **running on a public park trail** within the city limits." (ECF No. 157, pg. 1)

The hiking trail that Brian David Hill was allegedly on was the "Dick and Willie passage" hiking trail. That is all it was. There are no playgrounds on this trail. This trail is not called a park, and not considered as a park, but a hiking trail, a nature trail with access to the city in certain trail heads. See **Exhibit 1**, *"Dick & Willie Passage Rail Trail - Virginia Is For Lovers"*, a 3-page printout by family. Also at night the hiking trail has absolutely no children and usually no adults. Nobody in their right frame of mind would hike a hiking trail at night due to coyotes, wild black bears, and even the risk of running into criminals that usually conduct their dealings around nighttime (referencing drug dealers and gangs). There is no teeter totters (seesaw) on the hiking trail. There is no playgrounds on the trail. It is meant to be a walking trail, and a biking trail. Plenty of trees on both sides of the trail in various areas of the hiking trail.

That hiking trail was mentioned on affidavits/declarations by Brian prior to Document #157.

*"...near the hiking trail of "Dick and Willie"..."* (ECF No. 153, Pg. 3)

4

Anybody who conducts any investigation into the "Dick and Willie" hiking trail would know that it is not a "park" but just a public hiking trail. To smear the hiking trail as a park, is meant to ensnare Brian into being liable under the Sex Offender laws and regulations. That hiking trail is not a park. There is a clear difference between a public park and a public hiking trail.

"*Mr. Hill ran away from the officers* and *was shortly thereafter detained near a creek.*" (ECF No. 157, pg. 1)

That is a vague statement which paints a picture that Brian had allegedly and knowingly ran from the police. The fact is that they never announced verbally that they were officers of a law enforcement agency.

"...*I ran and then noticed a red lazer beam light like that private mercenaries, bad guys, and good guys all have. A light came on with a guy yelling at me. I didn't know who he was. I was scared it was them, going to kill me for not exactly following the hoodie guy's directives. I ran, fell down the left side slope of the trail, getting cuts and scrapes all over my body, until I fell in the creek bed.*" (ECF No. 153, Pg. 4)

So it is clear that they did not announce themselves as law enforcement. As far as Brian was concerned, he thought it was a bad guy or bad guys in his reported dealings with a man wearing a dark hoodie. Brian was scared and it is a normal reflex action to run away from criminals in the middle of the night. Brian did not knowingly and intentionally ran from officers. That was why Brian was never charged under V.A. Code § 18.2-460(E) and/or Virginia Code 18.2-479.1. That is because the officer who yelled at Brian did not announce verbally that he was a police officer. It was nighttime when visibility is very poor.

5

Two laws of Virginia code govern charges of "fleeing from an officer" of the law.

V.A. Code § 18.2-460(E), "*Any person who intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him, with or without a warrant, is guilty of a Class 1 misdemeanor. For purposes of this subsection, intentionally preventing or attempting to prevent a lawful arrest means <u>fleeing from a law-enforcement officer</u> when (i) the officer applies physical force to the person, or (ii) the officer communicates to the person that he is under arrest and (a) the officer has the legal authority and the immediate physical ability to place the person under arrest, and (b) a reasonable person who receives such communication knows or should know that he is not free to leave.*"

"Virginia Code 18.2-479.1: Fleeing from a law-enforcement officer; penalty"

"*A. Any person who intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him, with or without a warrant, is guilty of a Class 1 misdemeanor.*"

"*B. For purposes of this section, intentionally preventing or attempting to prevent a lawful arrest means fleeing from a law-enforcement officer when (i) the officer applies physical force to the person, or (ii) the officer communicates to the person that he is under arrest and (a) the officer has the legal authority and the immediate physical ability to place the person under arrest, and (b) a reasonable person who receives such communication knows or should know that he is not free to leave.*"

There is no evidence that Brian had intentionally fled from the law enforcement officer or officers. When Brian had realized that they were law enforcement officers, he had cooperated and that shows that Brian did not intentionally flee from justice.

6

That statement from the ECF No. 157 Petition for Warrant or Summons, is misleading and did not specify that the officer did not verbally announce that he was law enforcement before Brian had ran away.

*"Mr. Hill advised the officers that a "black man in a hoodie" made Mr. Hill "get naked and take pictures of himself."* (ECF No. 157, Pg. 1 and 2)

Brian had never stated in writing or verbally that it was a "black man in a hoodie".

*"I was approached by a man in a hoodie, probably some time between 11 to 12 that night, I think maybe between 5 to 6 feet tall, **maybe white**..."* (ECF No. 153, Pg. 3)

That statement made under declaration (penalty of perjury) said that Brian had thought the man wearing the hoodie was "WHITE" or sounded like a white guy and not a "BLACK MAN". Sounds kind of racist when the officers of Martinsville wanted to depict the suspect as being a "black man" when Brian stated he sounded like a white man.

*"...Hill was coerced and threatened by an unidentified guy wearing a hoodie..."* (ECF No. 162, Pg. 2, Paragraph 2)

That document also did not mention anything about a "black man" in a hoodie.

That was probably why the police were never able to find the "man in the hoodie" because they were too racially focused looking for a black man in a hoodie, that they were never going to find the suspect because they had already pictured some black man wearing a hoodie threatening a white man to get naked in public or his momma would be killed like it is some projects or ghetto like in big cities. The police made the wrong call and put the wrong description from Brian's statements.

7

Because of that, they were never going to find the suspect because they had already screwed up their case from the very beginning, such incompetence. It is clear incompetence and that isn't good for any law enforcement agency. They even refused to retain the blood vials drawn from Brian as evidence while he was at the hospital. They pretty much caused the hospital to destroy the blood vials causing Brian to never be able to prove the Carboxyhemoglobin levels and thus will never be able to fully prove carbon monoxide poisoning. Because of that they were able to make Brian look like a liar and have his supervised release wrongfully revoked. They destroyed evidence that could have proven Carboxyhemoglobin, and then have Brian's probation revoked. All of that was intentional fraud and sabotage.

That covers the issue of intrinsic fraud.

The issue of extrinsic fraud is that, Brian had repeatedly said that the man in the hoodie had sounded like a white guy, that the man in the hoodie had sounded like a white guy. Brian had told that to his lawyer Scott Albrecht, had told that to his family, and even to the police.

Brian never said that it sounded like a black guy in a hoodie. That element of fraud should be investigated by the court.

*"The camera contained several nude photographs of Mr. Hill in different locations around the city of Martinsville."* (ECF No. 157, Pg. 2)

That statement had apparently came from Officer Robert Jones of Martinsville Police Department.

Brian had reported that he had received a letter from his mother about a statement similar to what was said in the quoted sentence from Document #157.

8

"*Received a letter from Roberta Hill dated "Sept. 25, 2018." Parts of her letter said "I talked to Jason and he told me that the police said that you recanted the story that you told us in the hospital.*"" (ECF No. 152, Pg. 1)

"*Letter also said that "**taking photos of yourself at various places around town**.*""

That statement is false, according to Exhibit 2 of the Government's trial exhibits on September 12, 2019 during the revocation hearing, the photos were all taken around one area around the Dick and Willie hiking trail, (See citation on Document #186, Witness and Exhibit List).

When you hear from the petition that Brian allegedly was taking nude photos of himself "*in different locations around the city of Martinsville*", it sounds exactly like that. It would make any reasonable person feel that Brian was running all over the big city of Martinsville taking photos of himself at different areas around the city, by foot, as if Brian was walking to different areas of the city to take nude photos of himself.

However when AUSA Ramaswamy's Exhibit 2 (See **Exhibit 2**, attached to this pleading) (Cited in Document #186, Witness and Exhibit List) show that the photos were all taken around the Greene Co. Inc. building at night and at the places close to the Greene Co. Inc. building at night when nobody was working at the building, it shows a direct contradiction to the officer's claim that Brian was taking nude photos of himself around the city of Martinsville. There is a clear difference between "*around the city of Martinsville*" and in one specific area around the Dick and Willie passage hiking trail at night. Brian was not walking all over Martinsville taking photos of himself. He did hike miles and was arrested in a different area from where he had taken the photos, but he did not take photos

9

where he was allegedly arrested. Brian took photos only in one spot, in one area around the hiking trail, around one of the trailheads. It is a clear cut contradiction and is a fraud upon the court meant to make the story after Brian's arrest sound more extreme than it really truthfully was in regards to the photos obtained.

*"Mr. Hill was subsequently arrested for Indecent Exposure, in violation of Virginia Criminal Code § 18.2-37, a Class 1 Misdemeanor."* (ECF No. 157, Pg. 2)

That is not accurate or correct. There has to be enough factual elements of the crime to establish evidence that a crime was committed. Being arrested does not constitute evidence that a crime was committed. That is why jury trials and bench trials are set up, to determine whether the law was violated by a criminal defendant or not.

The statute in that petition was not even correctly cited. It was "§ 18.2-387. Indecent exposure". The wrong statute was cited in that petition.

From that statute: *"Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor. No person shall be deemed to be in violation of this section for breastfeeding a child in any public place or any place where others are present."*

There is a lot of well-established case law regarding the elements of what it takes to violate § 18.2-387 of Virginia Code.

Supplement 1: KENNETH WAYNE ROMICK v. COMMONWEALTH OF VIRGINIA, Record No. 1580-12-4

10

Supplement 2: KENNETH SAMUEL MOSES v. COMMONWEALTH OF VIRGINIA Record No. 0985-03-3

Supplement 3: A. M.* v. COMMONWEALTH OF VIRGINIA, Record No. 1150-12-4

Supplement 4: KIMBERLY F. NEICE v. COMMONWEALTH OF VIRGINIA, Record No. 1477-09-3

Notably, the allegations make reference to naked and nude but do not contain any reference to obscene or obscenity or intent. It does not contain any reference to masturbation and does not contain any reference to any evidence of sexual arousal.

The evidence is insufficient as to whether or not Brian had violated Virginia Code § 18.2-387.

A violation of a conditions of probation should be detailed enough to provide a demarcation line to afford a criminal defendant fair notice. In this case, that demarcation line is very detailed and clear when the condition is that the defendant is not to commit a "crime" because a "crime" is defined by elements which, when each element has been met, can serve as basis for a conviction of a "crime". Contrariwise, when any element of a defined crime has not been met with sufficient evidence, then there is insufficient evidence that the condition (i.e., not commit a crime) has been violated. In the case at hand, the alleged condition violation is based on committing the "crime" defined by Virginia Criminal Code § 18.2-387 which has been addressed by the courts of Virginia (See e.g., *Kimberly F. Neice v. Commonwealth of Virginia*, Record No. 1477-09-3 in the Circuit Court of Giles County; see also *A. M. v. Commonwealth of Virginia*, Record No. 1150-12-4 in the Circuit Court of Shenandoah County; see also *Kenneth Samuel Moses v.*

11

*Commonwealth of Virginia*, Record No. 0985-03-3 in the Circuit Court of Richmond. Note: these cases were also referenced by Brian in earlier filing with the Court in ECF No. 179 at page 10). These courts have found, concerning meeting all of the elements of the crime, that mere nudity is not a sufficient basis for a finding of obscene or indecent as would be required for Brian David Hill to have committed that crime. Based on the evidence in the District Court, Hill's conduct was not a crime because his actions did "not rise to the level of obscenity required under Code § 18.2-387, as defined in Code § 18.2-372."

To support a finding that a crime was committed as defined by Virginia Criminal Code § 18.2-387, the District Court must have found, at least, by a preponderance of the evidence that Hill's "actions had as their dominant purpose an appeal to the prurient interest in sex" with "purient interest in sex" meaning "a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse, and which goes substantially beyond customary limits of candor in description or representation of such matters and which, taken as a whole, does not have serious literary, artistic, political or scientific value." Such a finding has no support in the record of the District Court.

Parole and supervised release are both conditional liberty but revocation of either is subject to the requirements of due process which includes "a written statement by the factfinders as to the evidence relied on and reason for revoking". See *Morrissey v. Brewer*, 408 U.S. 471, 489-90 (1972).

There is no factual basis that Brian David Hill had been "*in violation of Virginia Criminal Code § 18.2-37, a Class 1 Misdemeanor*." (ECF No. 157, Pg. 2)

The Probation Office assumed that Brian David Hill was already guilty and had violated Criminal Code § 18.2-387, there was no fact of such as the petition was

12

filed one month before the General District Court trial that was set for December 21, 2018. The petition was flawed and should not have been executed until Brian was convicted of the state charge and had exhausted all appeals and had failed. However Officer Robert Jones had admitted at the hearing on September 12, 2019, that Brian had not been obscene. There is no evidence of obscenity against Brian as to the violation and the evidence of his state charge.

In fact multiple written filings before Brian's arrest for the violation had stated under penalty of perjury, under oath, that Brian had never masturbated.

"...I was threatened to get naked, I never masturbated, it was a crazy incident. Whoever threatened me needs to be charged and arrested..." (ECF No. 153, Pg. 9)

"Attorney said that I can bring up about the guy wearing the hoodie. Said that under the law, I would have to have masturbated or be aroused in public to have committed indecent exposure. After he heard my story about the guy in the hoodie, he said taking pictures of myself is not illegal. So he argued that I am technically innocent." (ECF No. 163, Pg. 5)

"I never masturbated, I told the police the truth. When I was seen by a passing vehicle, I never masturbated." (ECF No. 163, Pg. 4)

Same statements in Amended declaration under Document #164.

Multiple affidavits, same statements that Brian had never masturbated in public.

There is no evidence at all of obscenity, no evidence of sexual behavior.

It is a fraud upon the court for the U.S. Probation Office to assert that Brian had violated Virginia law when his own lawyer, an assistant public defender none the

13

less, had stated that Brian never violated Virginia law. Then well-established case law precedents stating that simply being naked is not obscene. Which that of course is the same as nudism (nudism is non-sexual nudity), a nudist out of place for example. Whether or not Brian can prove that carbon monoxide had caused his bazaar behavior on September 21, 2018, is irrelevant when the conduct of Brian did not rise to the level of obscenity for him to be guilty of indecent exposure.

It is clear that Brian had violated no law and engaged in no commission of a crime.

There is no basis to support the fact of Brian ever had violated Virginia law unless he was to be convicted and the conviction affirmed by the highest court in Virginia. Is Brian to be punished for lawful nudism arguably? If he were in an area where nudism was okay, would Brian have been in violation for that?

## ANALYSIS OF THE CASE LAW INVOLVING FRAUD UPON THE COURT

Various specific types of falsification violate federal criminal laws. See, e.g., 18 U.S.C. § 1621 (perjury punishable by up to five years' imprisonment); 18 U.S. Code § 1622 (subornation of perjury punishable up to five years' imprisonment); 18 U.S.C. § 1519 (knowing falsification or destruction of documents or other tangible objects punishable by up to 20 years' imprisonment); 18 U.S.C. § 1520 (destruction of certain corporate audit records punishable by up to 10 years of imprisonment). And knowing destruction or falsification of documents in an attempt to influence the outcome of a judicial proceeding also violates the general "obstruction of justice" law. 18 U.S.C. § 1503. See, e.g., U.S. v. Craft, 105 F.3d 1123, 1128 (6th Cir. 1997) ("Acts that distort the evidence to be presented or otherwise impede the administration of justice are violations of 18 U.S.C. § 1503.

14

The act of altering or fabricating documents used or to be used in a judicial proceeding would fall within the obstruction of justice statute if the intent is to deceive the court."). All states have similar laws.

Citing: 501 U.S. 32, 44 (1991), G. RUSSELL CHAMBERS vs. NASCO, INC., 501 US 32, 115 L Ed 2d 27, 111 S Ct 2123, reh den 501 US 1269, 115 L Ed 2d, 1097, 112 S Ct 12, [No. 90-256], Argued February 27, 1991., Decided June 6, 1991.

"501 U.S. at 56–57; see also Synanon Found., Inc. v. Bernstein, 517 A.2d 28, 43(D.C. 1986) (once a party embarks on a "pattern of fraud," and "[r]egardless of the relevance of these [fraudulent] materials to the substantive legal issue in the case," this is enough to "completely taint [the party's] entire litigation strategy from the date on which the abuse actually began")."

The perjury of USPOS Kevin M. Alligood and the subornation of perjury by Edward R. Cameron shows that they are willing to deceive the Court in an attempt to punish and revoke the Supervised Release of Defendant/Petitioner and be able to use that violation as leverage to push for the maximum imprisonment if the Defendant/Petitioner is ever accused of another violation of Supervised Release condition in the future. If AUSA Ramaswamy is not willing to undo the damage he had caused by having Brian's supervised release wrongfully revoked since Brian's conduct was completely legal, then Ramaswamy has further permitted, used, and encouraged frauds upon the court and had violated N.C. State Bar Rule 3.8, again. He continues wanting to imprison and persecute an innocent man. Innocent of indecent exposure statute of Virginia, and actually innocent of the original conviction of possession of child pornography (ECF No. 125, 128). AUSA

15

Ramaswamy cannot control himself in wrongfully convicting people, and to always win cases at any cost.

There is no established fact that Brian's conduct had violated § 18.2-387. It is not good for a legitimate Article III federal court to punish and imprison an actually innocent person. It is considered cruel and unusual punishment, in violation of the Eighth (8th) Amendment under the United States Constitution, to imprison an innocent man or woman. The revocation petition had pushed for imprisonment of Brian David Hill, despite being legally innocent of indecent exposure and has a high chance of being acquitted by proper jury instructions or being acquitted by the Courts of Appeals which would create yet another case law authority on indecent exposure, with highly likely the exact same reasoning as to why Brian is not guilty of indecent exposure.

The Court has the authority to reverse the judgments that are based upon frauds upon the court. Fact frauds, frauds of innocent people being imprisoned, testimony frauds (perjury, lying, false statements) and document frauds such as submitting any official government or court documents with false information. It must be corrected to protect the integrity of the judiciary.

See Breezevale Ltd. v. Dickinson, 879 A.2d 957, 964 (D.C. 2005)(affirming sanction of dismissal where top executives of plaintiff company engaged in scheme to forge documents and subsequently denied the forgery in pleadings and sworn testimony); Synanon Found., Inc. v. Bernstein, 503 A.2d 1254, 1263 (D.C. 1986)(affirming sanction of dismissal where plaintiff, inter alia, destroyed audiotapes and made false statements to the court "that no responsive documents could be found" in order "to deceive the court, and to improperly influence the court in its decision on the defendants' motions to compel, with the ultimate aim of

16

preventing the judicial process from operating in an impartial fashion"); Cox v. Burke, 706 So. 2d 43 (Fla. Dist. Ct. App. 1998) (affirming sanction of dismissal where plaintiff gave false answers to interrogatories and deceptive deposition testimony); Pope v. Fed. Express Corp., 974 F.2d982, 984 (8th Cir. 1992) (affirming sanction of dismissal for plaintiff's forgery of, and reliance on, a single document); Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir.1989) (affirming dismissal where plaintiff concocted a single document); Tramel v. Bass, 672 So. 2d 78, 82 (Fla. Dist. Ct. App.1996) (affirming default judgment against defendant who excised damaging six-second portion of videotape before producing it during discovery).

A court also may impose additional monetary sanctions—in the form of fines or punitive damages—above and beyond the specific amount of the innocent party's fees and expenses.

Jemison v. Nat'l Baptist Convention, 720 A.2d 275, 285 (D.C. 1998) (punitive damages may be imposed if court finds that bad faith litigator acted with malice).

AUSA Ramaswamy did not want to address the substantial evidential issues of Brian not being obscene and that Brian had never masturbated in public. Brian was not sexually aroused in public. Brian had not repeated the behavior that had been exhibited on September 21, 2018. Brian was clearly not in his right frame of mind and had no intent to violate § 18.2-387. There was no reason to enter an order revoking Brian's supervised release for a crime that he is legally innocent of. Even if Brian was inappropriately being a nudist out of place and should have been in a nudist colony or nudist beach or nudist resort or nudist camp to freely walk around naked, he did not break the law as it was defined. Even though it is clear that Brian should not have been out there at night, but <u>Brian never actually broke the law.</u>

17

More frauds upon the court will be brought up from the September 12, 2019 final revocation hearing after receipt of the Transcript. Defendant/Petitioner shall push more evidence of any findings of the frauds upon the court, to further push for vacating that Judgment at a later time, and will also push for default judgment of the 2255 Motion on the ground of actual innocence as a matter of law or matter of constitutional right and based upon the Government's repeated pattern of frauds and abuses upon the court against Brian David Hill, to win for the Government. The 2255 statutory filing deadlines do not block a Defendant's/Petitioner's ability to petition a court to vacate a fraudulent begotten Judgment. A Judgment is not subject to finality where there is any evidence of a fraud upon the court that led to such judgment.

Defendant asks that the Honorable Court consider vacating the fraud begotten oral judgment of September 12, 2019, and vacating the fraudulent begotten written judgment under Document #200, filed: October 7, 2019, "JUDGMENT ON REVOCATION OF PROBATION/SUPERVISED RELEASE. The Defendant's supervised release is revoked. Nine (9) months imprisonment. Nine (9) years supervised release is re-imposed under the same terms and conditions as previously imposed. The Defendant shall surrender to the U.S. Marshal for the Middle District of N.C. or to the institution designated by the Bureau of Prisons by 12:00 p.m. on 12/6/2019 as to BRIAN DAVID HILL. Signed by CHIEF JUDGE THOMAS D. SCHROEDER on 10/4/2019. (Daniel, J))".

WHEREFORE, Brian prays for relief that the fraudulent begotten Judgments concerning the Supervised Release Violation of 2018 (ECF No. 157) to 2019 (ECF No. 200) be vacated or set aside, and be stricken from the record unless such evidence must remain on the record to further prove a repeated pattern of fraud

18

upon the court by the Government and/or by the U.S. Probation Office for the 2255 case when Brian pushes for default judgment.

WHEREFORE, Brian prays that any judgments adverse to Defendant/Petitioner and favorable to the Government in the future that had cited the violation charge from Document #157 to also be modified, corrected, or reconsidered to address the frauds upon the court and not use them against Defendant/Petitioner who is a victim of such frauds by the adversary.

### The sanctions Defendant/Petitioner are requesting are as followers:

WHEREFORE, Defendant/Petitioner prays that the Court vacate and reverse the fraudulent begotten judgment entered under Document #200;

WHEREFORE, Defendant/Petitioner prays that the Court consider reversing, vacating, nullifying, setting aside, or even striking any other Judgments in favor of the United States of America (Respondent/Plaintiff) and in favor of the U.S. Probation Office when they had used any frauds upon the court to obtain favorable judgment;

WHEREFORE, Defendant/Petitioner prays that he be reimbursed for any or all legal expenses that was necessary to defend against such frauds and the expenses can be simple things such as postage for legal mailings and paper and printer ink and/or any other resources necessary, and be reimbursed for any emotional damages caused by the adverse party.

WHEREORE, Defendant/Petitioner prays that the Court hold Kevin M. Alligood (U.S. Probation Officer Specialist), and Edward R. Cameron

19

(Supervisory U.S. Probation Officer) accountable for perjury (or subornation of perjury), unethical or unprofessional misconduct, and/or fraud or frauds being pushed through the Petition for revocation under Document #157.

WHEREFORE, Defendant/Petitioner prays that Kevin M. Alligood be charged with perjury or subornation of perjury and that the judge recommend that he be charged with perjury.

WHEREFORE, Defendant/Petitioner prays that the court consider reporting Edward R. Cameron's misconduct to the U.S. Merit Systems Protection Board for an investigation for ethics violations and unprofessional misconduct.

WHEREFORE, Defendant/Petitioner prays that the court consider reporting Kevin M. Alligood's misconduct to the U.S. Merit Systems Protection Board for an investigation for ethics violations and unprofessional misconduct.

WHEREFORE, Defendant/Petitioner prays that Martinsville Police Officer Robert Jones be charged with Obstruction of Justice by supplying false information to Kevin M. Alligood and any other U.S. Probation Officials and that the judge recommend that he be charged with Obstruction of Justice.

WHEREFORE, Defendant/Petitioner prays that the Court sanction AUSA Ramaswamy for misconduct including violation of State Bar Rule 3.8.

WHEREFORE, Brian prays that he receives any other relief that the Court deems as necessary and proper.

**Attached evidence**

20

<u>Supplement 1:</u> Case law: KENNETH WAYNE ROMICK v. COMMONWEALTH OF VIRGINIA, Record No. 1580-12-4. <u>Total of 5 pages.</u>

<u>Supplement 2:</u> Case law: KENNETH SAMUEL MOSES v. COMMONWEALTH OF VIRGINIA Record No. 0985-03-3. <u>Total of 29 pages. The pages 30 through 39 of the case filing was omitted from this supplement.</u>

<u>Supplement 3:</u> Case law: A. M.* v. COMMONWEALTH OF VIRGINIA, Record No. 1150-12-4. <u>Total of 8 pages.</u>
Total is 11 pages of attachment including Supplement marker pages.

<u>Supplement 4:</u> Case law: KIMBERLY F. NEICE v. COMMONWEALTH OF VIRGINIA, Record No. 1477-09-3. <u>Total of 8 pages.</u>
Total is 54 pages of attachment including Supplement marker pages.

### Declaration of Brian David Hill on attached evidence

I, Brian David Hill, declare pursuant to Title 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

1. Attached hereto as <u>Exhibit 1</u>, is a true and correct photocopy of a printout of the "Dick & Willie Passage Rail Trail - Virginia Is For Lovers", a 3-page printout by family. <u>Total of 3 pages.</u>

2. Attached hereto as <u>Exhibit 2,</u> is a true and correct black-and-white photocopy of Assistant United States Attorney Anand Prakash Ramaswamy's Exhibit 2 that was presented at the final revocation hearing dated September 12, 2019 (Citation on Document #186, Witness and Exhibit List). Showed the alleged location of where the nude photographs were taken. Original may or may not have been in color but Renorda Pryor had did her best to have scanned the exhibit and other exhibits in black-and-white due to the limitations of her scanner. <u>Total of 1 pages.</u>

Total is 6 pages of attachment including Exhibit marker pages.

21

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 11, 2019.

Respectfully submitted,

*Brian D. Hill*
Signed            Signed
Brian D. Hill (Pro Se)
310 Forest Street, Apartment 1
Martinsville, Virginia 24112
Phone #: (276) 790-3505



Former U.S.W.G.O. Alternative News reporter
I stand with QANON/Donald-Trump – Drain the Swamp
I ask Qanon and Donald John Trump for Assistance (S.O.S.)
Make America Great Again

Respectfully filed with the Court, this the 11th day of October, 2019.

Respectfully submitted,

*Brian D. Hill*
Signed            Signed
Brian D. Hill (Pro Se)
310 Forest Street, Apartment 1
Martinsville, Virginia 24112
Phone #: (276) 790-3505



Former U.S.W.G.O. Alternative News reporter
I stand with QANON/Donald-Trump – Drain the Swamp
I ask Qanon and Donald John Trump for Assistance (S.O.S.)
Make America Great Again

22

Petitioner also requests with the Court that a copy of this pleading be served upon the Government as stated in 28 U.S.C. § 1915(d), that "The officers of the court shall issue and serve all process, and preform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases". Petitioner requests that copies be served with the U.S. Attorney office of Greensboro, NC via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

## CERTIFICATE OF SERVICE

Petitioner hereby certifies that on October 11, 2019, service was made by mailing the original of the foregoing:

"PETITIONER'S SECOND MOTION FOR SANCTIONS AND TO VACATE JUDGMENT THAT WAS IN PLAINTIFF'S/RESPONDENT'S FAVOR -- MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF REQUESTING THE HONORABLE COURT IN THIS CASE VACATE FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS"

by deposit in the United States Post Office, in an envelope (certified mail), Postage prepaid, on October 11, 2019 addressed to the Clerk of the Court in the U.S. District Court, for the Middle District of North Carolina, 324 West Market Street, Greensboro, NC 27401.

Then pursuant to 28 U.S.C. §1915(d), Petitioner requests that the Clerk of the Court move to electronically file the foregoing using the CMIECF system which will send notification of such filing to the following parties to be served in this action:

| Anand Prakash Ramaswamy | Angela Hewlett Miller |
|---|---|
| U.S. Attorney Office | U.S. Attorney Office |
| Civil Case # 1:17 -cv-1036 | Civil Case # 1: 17 -cv-1036 |
| 101 South Edgeworth Street, 4th | 101 South Edgeworth Street, 4th |
| Floor, Greensboro, NC 27401 | Floor, Greensboro, NC 27401 |

23

| Anand.Ramaswamy@usdoj.gov | angela.miller@usdoj.gov |
|---|---|
| JOHN M. ALSUP<br>U.S. Attorney Office<br>101 South Edgeworth Street, 4th<br>Floor, Greensboro, NC 27401<br>john.alsup@usdoj.gov | |

This is pursuant to Petitioner's "In forma Pauperis" ("IFP") status, 28 U.S.C. §1915(d) that "The officers of the court shall issue and serve all process, and perform all duties in such cases ... "the Clerk shall serve process via CM/ECF to serve process with all parties.

| Date of signing:<br><br>*October 11, 2019* | Respectfully submitted,<br><br>*Brian D. Hill*<br>Signed     Signed<br>Brian D. Hill (Pro Se)<br>310 Forest Street, Apartment 1<br>Martinsville, Virginia 24112<br>Phone #: (276) 790-3505<br><br>**U.S.W.G.O.**<br><br>I stand with QANON/Donald-Trump – Drain the Swamp<br>I ask Qanon and Donald John Trump for Assistance (S.O.S.)<br>Make America Great Again |

I ask Department of Defense ("DOD") military Constitutional oath keepers, alliance, Qanon for help in protecting me from corruption and criminal behavior of Government.

Certified Mail tracking no: 7019-1120-0001-4751-4580

Friend's justice site: JusticeForUSWGO.wordpress.com

24

# Exhibit 1

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Exhibit in attachment to "PETITIONER'S SECOND MOTION FOR SANCTIONS
AND TO VACATE JUDGMENT THAT WAS IN PLAINTIFF'S/RESPONDENT'S
FAVOR -- MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF
REQUESTING THE HONORABLE COURT IN THIS CASE VACATE
FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS"

OUTDOORS AND SPORTS

# DICK & WILLIE PASSAGE RAIL TRAIL

**ADDRESS**
699 Liberty St.
Martinsville, VA 24112

**PHONE**
276-634-4640

**CITY**
Martinsville
**LOCALITY**
Martinsville City

**EMAIL US**
mailto:radams@co.henry.va.us

**VISIT SITE**
http://www.henrycountyva.gov/parksandrec

The Dick and Willie Passage Rail Trail is a beautiful 4.5 mile paved rail trail that is located in Martinsville and Henry County. The trail begins at Virginia Avenue and ends near Mulberry Creek in Martinsville. The trail can be accessed at one of four locations; Virginia Avenue, Liberty St., Doyle St and Fisher St. This trail is great for walking, biking, running or rollerblading.

This trail is part of the former Danville and Western Railroad.  Train enthusiasts will enjoy reading stories about the history of the rail line on the many signs located along the trail. Contact Henry County Parks and Recreation at 276.634.4640 for more information about the trail.

Addresses for trail access location:

- Virginia Avenue - 1094 Virginia Ave., Martinsville, VA

- Liberty Street - 699 Liberty St., Martinsville, VA

- Doyle Street - 220 Doyle St., Martinsville, VA

- Fisher Street - 815 Fisher St., Martinsville, VA

**AMENITIES**

Dick & Willie Passage Rail Trail - Virginia Is For Lovers          https://www.virginia.org/listings/OutdoorsAndSports/DickWilliePassage...

· Family Friendly                    · Pet Friendly

**ACCESSIBILITY**



**REGION**

Southern Virginia

Last Updated: 09/15/2015

# What's Nearby



### FAMOUS SUBS & MORE

811 Liberty Street
Martinsville, VA 24112

**0.11** MI



### EVERYTHING UNNECESSARY

716 Liberty Street
Martinsville, VA 24112

**0.12** MI



### THE VILLAGE OF MARTINSVILLE

240 Commonwealth Blvd.
Martinsville, VA 24112

**0.44** MI



### DUNHAM'S SPORTS

240 Commonwealth Blvd.

**0.44** MI



### MARSHALLS DEPARTMENT STORE

240 Commonwealth Blvd.
Martinsville, VA 24112

**0.44** MI

OFFICIAL TOURISM WEBSITE OF THE COMMONWEALTH OF VIRGINIA ● © 2019 VIRGINIA TOURISM CORPORATION

Case 1:13-cr-00435-TDS   Document 206-1   Filed 10/15/19   Page 4 of 4

# Exhibit 2

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Exhibit in attachment to "PETITIONER'S SECOND MOTION FOR SANCTIONS
AND TO VACATE JUDGMENT THAT WAS IN PLAINTIFF'S/RESPONDENT'S
FAVOR -- MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF
REQUESTING THE HONORABLE COURT IN THIS CASE VACATE
FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS"

1. Photos SANYO1-2, 094-101, starting at 12:29 a.m.

2. Photos SANYO103-109, 110-114, starting at 12:36 a.m.

3. Photos SANYO115-20, starting at 12:51 a.m.

4. Photos SANYO121-122, starting at 1:01 a.m.

5. Photos SANYO123-126, starting at 1:08 a.m., ending at 1:20 a.m.

Kiddy Kats

Greene Co of Virginia

Dick and Willie Dr

Virginia Ave

El Parral Mexican

Roses Flooring and Furniture

Ci Auth

Cato

Yato Japanese

Virginia ABC

Shoe Dept

URW Community Federal Credit Union

Mr. Tire Auto Service Centers

Commonwealth Blvd

Col

# Supplement 1

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Supplement in attachment to "PETITIONER'S SECOND MOTION FOR SANCTIONS
AND TO VACATE JUDGMENT THAT WAS IN PLAINTIFF'S/RESPONDENT'S
FAVOR -- MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF
REQUESTING THE HONORABLE COURT IN THIS CASE VACATE
FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS"

COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Petty and Senior Judge Haley
Argued at Alexandria, Virginia

KENNETH WAYNE ROMICK

v.      Record No. 1580-12-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE JAMES W. HALEY, JR.
NOVEMBER 19, 2013

FROM THE CIRCUIT COURT OF WARREN COUNTY
Dennis L. Hupp, Judge

Peter K. McDermott, Assistant Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Kenneth Wayne Romick was convicted of indecent exposure, third offense, in violation of

Code §§ 18.2-387 and 18.2-67.5:1, and he argues the evidence was insufficient to prove that he

intentionally made a display of his private parts and that such display was obscene. We agree that

such display was not obscene and reverse and dismiss the indictment.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438,

443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence proved that at approximately 6:00 p.m.

on March 21, 2011, Investigator Smoot investigated a suspicious person at an abandoned motel.

Smoot arrested Romick and transported him to the station. Romick was dressed in a woman's white

nightgown that reached the top of his knees. Later that evening, Smoot found a car registered to

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"Mary Romick" parked behind a Holiday Inn. The Holiday Inn was approximately 100 feet from the abandoned motel where Smoot had encountered Romick earlier that day. At approximately 7:00 p.m. on March 22, 2011, Smoot returned to the Holiday Inn and noticed that Mary Romick's car had not moved. When Smoot returned at approximately 9:30 p.m., he saw that Mary Romick's car was no longer parked at the Holiday Inn. Smoot confirmed that Romick had been released from jail, and Smoot searched for the car because he knew Romick did not have a valid driver's license.

At approximately 12:25 a.m. on March 23, 2011, Smoot saw Mary Romick's car in the parking lot of a Hampton Inn. As Smoot exited his car, he saw Romick lying in the driver's seat, wearing the same white nightgown, and the nightgown was pulled up to his navel area, exposing Romick's genitals.

In the two to three seconds that it took Smoot to walk to the car, Romick did not cover himself. As Smoot approached Romick's car, Smoot could not tell if Romick was aroused. After Smoot told Romick "put some clothes on," Romick pulled down the nightgown, picked up a pair of pants, and put them on.

Romick testified when he was released from jail, he was wearing coveralls over the nightgown and his parents drove him to the car registered to Mary Romick. Romick testified he called a few friends, but no one was available to help him and he decided to drive home. Romick testified he drove to a fast-food restaurant, realized he had no money, and decided to drive further back in the lot to find a parking space to sleep. Romick testified he removed the coveralls because he was warm, listened to the radio, made phone calls, and saw Smoot pull into the parking lot. Romick testified after Smoot stopped his car, he leaned back further to find his pants in the passenger seat, and had his pants in his hands when Smoot arrived at his window. Romick explained that his nightgown was above his waist because he lifted his leg to put on the pants.

-2-

In finding Romick guilty, the trial judge found that Romick parked in a hotel parking lot, wearing only a woman's nightgown pulled up to his navel clearly exposing his genitals, and his pants were on the seat next to him. The trial judge found that "[t]he whole set of circumstances indicates it is an intentional act and what other purpose could there be but to appeal to his prurient interest."

Code § 18.2-387 provides in part, "Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor."

"Code § 18.2-387 requires proof that defendant intentionally made an obscene display or exposure of his person, or the private parts thereof, in any public place." Hart v. Commonwealth, 18 Va. App. 77, 79, 441 S.E.2d 706, 707 (1994).

Assuming without deciding that Romick's display of his private parts was intentional, such display was not obscene.

> The word "obscene" . . . shall mean that which, considered as a
> whole, has as its dominant theme or purpose an appeal to the
> prurient interest in sex, that is, a shameful or morbid interest in
> nudity, sexual conduct, sexual excitement, excretory functions or
> products thereof or sadomasochistic abuse, and which goes
> substantially beyond customary limits of candor in description or
> representation of such matters and which, taken as a whole, does
> not have serious literary, artistic, political or scientific value.

Code § 18.2-372.

The "obscenity" element of Code § 18.2-387 may be satisfied when: (1) the accused admits to possessing such intent, Moses v. Commonwealth, 45 Va. App. 357, 360, 611 S.E.2d 607, 608 (2005) (en banc); (2) the defendant is visibly aroused, Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000); (3) the defendant engages in masturbatory behavior, Copeland v. Commonwealth, 31 Va. App. 512, 514, 525 S.E.2d 9, 10 (2000); or (4) in other circumstances when

- 3 -

the totality of the circumstances supports an inference that the accused had as his dominant purpose a prurient interest in sex, Hart, 18 Va. App. at 80, 441 S.E.2d at 707-08. The mere exposure of a naked body is not obscene. See Price v. Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974) (finding that "[a] portrayal of nudity is not, as a matter of law, a sufficient basis for finding that [it] is obscene").

"'On appeal, we must make an independent determination of the constitutional issue of obscenity, which is a mixed question of law and fact.'" Lofgren v. Commonwealth, 55 Va. App. 116, 119-20, 684 S.E.2d 223, 225 (2009) (quoting Allman v. Commonwealth, 43 Va. App. 104, 110, 596 S.E.2d 531, 534 (2004)). The Court must examine the particular circumstances of each case to determine whether something is obscene. Id. at 121, 684 S.E.2d at 226.

In this case, Romick did not admit to having an obscene intent, he was not visibly aroused, and there was no evidence he was masturbating. Thus, Romick's actions were only obscene if the totality of the circumstances support an inference that he had as his dominant purpose a prurient interest in sex.

Our decision in Hart is instructive as to circumstances proving the type of behavior that has a dominant purpose a prurient interest in sex. In Hart, the defendant entered a store, asked an employee for help, and when the employee looked up, she saw that the defendant had "dropped his pants" and was wearing a "skimpy G-string." Hart, 18 Va. App. at 78, 441 S.E.2d at 706. The G-string covered the defendant's penis, but the employee could see the outline of the defendant's penis, his buttocks, and the remaining pubic area. Id. The defendant stated his shorts just kept falling off, modeled his outfit for the employee, told the employee he searched all over town for the outfit, stated he like to wear it or nothing at all when he went out on his boat, and asked the employee what she thought of his outfit. The defendant also stated the shorts "were great" because they attached with velcro, which "gave easy access to women who wanted him." Id. at 78, 441

- 4 -

# Supplement 2

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Supplement in attachment to "PETITIONER'S SECOND MOTION FOR SANCTIONS
AND TO VACATE JUDGMENT THAT WAS IN PLAINTIFF'S/RESPONDENT'S
FAVOR -- MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF
REQUESTING THE HONORABLE COURT IN THIS CASE VACATE
FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS"

## COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Benton, Elder, Frank, Humphreys, Clements, Felton,
Kelsey and McClanahan
Argued at Richmond, Virginia

KENNETH SAMUEL MOSES

                 OPINION BY
v.  Record No. 0985-03-3        JUDGE D. ARTHUR KELSEY
                    APRIL 12, 2005

COMMONWEALTH OF VIRGINIA

### UPON REHEARING EN BANC

#### FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge

Eric G. Peters, Sr., for appellant.

Deana A. Malek, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on briefs), for appellee.

Kenneth Samuel Moses challenges his conviction on two counts of making an obscene

display or exposure in violation of Code § 18.2-387. Finding no error in the trial court's

application of the statute to this case, we affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). That principle

requires us to "'discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and *all fair*

*inferences to be drawn therefrom.*'" Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d

755, 759 (1980) (emphasis in original and citation omitted).

On August 8, 2001, Moses walked up to a 10-year-old girl at a Kmart. While he masturbated in front of the child, he told her she was "very beautiful." The child saw his hand "through his pants" exercising his penis. Pale with fright, the child later told her mother what happened.

On December 4, 2001, Moses stalked an 11-year-old girl at a Wal-Mart. He made eye-contact with the child and passed her in the aisle several times. As he did so, Moses masturbated with a hand down his pants while looking directly at her. During a brief moment while the child's mother spoke with a friend, Moses approached the girl. He told her she was a "pretty girl" and asked her how her "butt felt." The child ran to her mother confused and upset.

After his arrest, Moses admitted both incidents. According to him, he used a similar *modus operandi* about 40 to 50 times with young girls. It "kinda became a habit." Moses said he would frequent Wal-Mart and Kmart because "[t]hat's where the crowd is and where you can wander around and look at people." "It became a method of letting off steam," he explained, "because I had no other sexual outlet." His underlying motive, Moses said, was the "need to fulfill my sex drive."

After reviewing a sex offender evaluation of Moses, the trial judge found him to be a sexual "predator" and concluded "the least I can do in this case is to try to prevent you from committing these crimes again by incarcerating you." Convicted of two counts of obscene display or exposure under Code § 18.2-387, Moses appeals both convictions.

II.

At trial, Moses argued that his conduct did not violate Code § 18.2-387 as a matter of law.[1] Such behavior can only offend the statute, he reasoned, if it takes place at least partly in

---

[1] As he concedes on appeal, Moses never challenged the obscene nature of his conduct. Rule 5A:18 precludes him from asserting this challenge for the first time on appeal. No basis exists in this case for invoking the "good cause" or "ends of justice" exceptions to Rule 5A:18.

- 2 -

the nude. A divided panel of our Court agreed with this reasoning and vacated Moses's

convictions under Code § 18.2-387. Moses v. Commonwealth, 43 Va. App. 565, 600 S.E.2d 162

(2004). Having reconsidered this case *en banc*, we now affirm. We come to this conclusion

based upon the common law history of this offense and the literal text of the statute codifying it.

### A. THE COMMON LAW ANTECEDENTS OF CODE § 18.2-387

The common law recognized any "open and notorious lewdness" as an indictable offense.

4 William Blackstone, Commentaries on the Law of England *64 (1769). The offense included

any "grossly scandalous and public indecency." Id. Virginia adopted this common law

restatement. See William W. Hening, The Virginia Justice 431 (4th ed. 1825) (stating that "in

general, all open lewdness, grossly scandalous, is punishable upon indictment at common law");

James M. Matthews, Virginia Criminal Laws 123 (2d ed. 1878) (recognizing crime of "open and

gross lewdness and lasciviousness").[2]

At common law, nudity or near nudity was never the all-important referent. The lewd

nature of the *conduct* itself, if open and notorious, was the main characteristic of the offense.

When state legislatures began codifying various subsets of this common law crime, they did not

abandon its "open and notorious" characteristic. The history of these codification efforts

> leads to one of two possible conclusions about the framers'
> intentions with respect to the regulation of sexual intercourse and
> masturbation. On the one hand, it could be inferred that, because
> the framers so relentlessly prohibited even as little as public
> nudity, it necessarily follows that public intercourse and

---

[2] The "best construction" of a statute codifying common law principles is the one "most near to the reason of the common law, and by the course which that observes in cases of its own." Chichester v. Vass, 5 Va. (1 Call) 83, 102 (1797), quoted in part in Wicks v. Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974). "The reason is that the Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." Wicks, 215 Va. at 276, 208 S.E.2d at 755.

- 3 -

> masturbation would have been regarded as even more odious and even more obviously subject to state regulation. On the other hand, it could be inferred that, although the framers understood that public nudity could be regulated, they apparently understood that public nudity while engaged in intercourse or masturbation could not (or that both were permissible as long as the offenders kept their clothes on). Frankly, given the evidence that we have described about antebellum public morals, statutes, and case law, we find the latter possibility to be remote, to say the least.

State v. Ciancanelli, 45 P.3d 451, 459 (Or. Ct. App.) (*en banc*), petition for review allowed, 58 P.3d 821 (Or. 2002).

It follows that masturbation in a public place, in a manner obvious to all, falls squarely within reach of the common law. See generally Miller v. California, 413 U.S. 15, 25 (1973) (noting that patently offensive "representations or descriptions of masturbation" are "obscene"); State v. Maunsell, 743 A.2d 580, 582-83 (Vt. 1999) (upholding conviction for "open and gross lewdness" where defendant "massag[ed] his genitals through his pants" in a public place); see also United States v. Statler, 121 F. Supp. 2d 925, 927 (E.D. Va. 2000) (observing that "there is little doubt that masturbation in a public bathroom, if proven, fits well within the federal regulation proscribing 'a display or act that is obscene'").

### B. Obscene "Display Or Exposure" Under Code § 18.2-387

Consistent with the common law, Virginia codified a particular type of lewdness offense in Code § 18.2-387. Leaving little doubt as to its intentions, the General Assembly criminalized the "obscene display *or* exposure" of one's person or private parts in a public place. Code § 18.2-387 (emphasis added).

Moses argues the word "exposure" means nudity and "display" means nothing more, making the disjunctive no more than a redundant conjunctive. We find this reasoning inconsistent with first principles of statutory construction. As has been often said: "Words in a statute should be interpreted, if possible, to avoid rendering words superfluous." Cook v.

- 4 -

Commonwealth, 268 Va. 111, 114, 597 S.E.2d 84, 86 (2004); Zhou v. Zhou, 38 Va. App. 126, 136, 562 S.E.2d 336, 340 (2002) (observing that "basic canons of statutory construction" exclude interpretations rendering statutory language "superfluous"). "It is the duty of the courts to give effect, if possible, to every word of the written law." Hodges v. Commonwealth, 45 Va. App. 118, 126, 609 S.E.2d 61, 65 (2005) (en banc) (citation omitted).

Unless the word "display" is superfluous, it must mean something different from "exposure." If "exposure" can only mean some degree of nudity, then "display" necessarily means something different. And so it does. Among the definitions of "display" in ordinary speech (particularly where, as here, it is used as a noun rather than a verb) is the "demonstration or manifestation of something." American Heritage Dictionary 407 (2d coll. ed. 1985).[3] It is just that definition we give to the word "display" when used in other provisions of the Code.

For example, Code § 18.2-53.1 criminalizes the "display" of a firearm while committing a felony. A robber can effectively "display" a firearm in his pocket even though completely hidden from view. Cromite v. Commonwealth, 3 Va. App. 64, 66-67, 348 S.E.2d 38, 39-40 (1986). The word "display" means "not only the notion of spreading before view or exhibiting to the sight, but also that which is manifested to any of a victim's senses . . . ." Id. (quoting State v. Smallwood, 346 A.2d 164, 167 (Del. 1975)). "Thus a weapon may be manifested to a victim even though he may not see it" because the ability to otherwise discern the weapon's presence is itself a manifestation "just as effective, for the statutory purpose, as putting a gun in plain view." Id.; see also Deshields v. State, 706 A.2d 502, 507 (Del. 1998) (finding that robber "displays" a weapon by putting his hand in his pocket and then handling the weapon); People v. Butts, 580

---

[3] This point demonstrates the irrelevance of cases like State v. Jaime, 236 A.2d 474, 475 (Conn. Cir. Ct. 1967), and State v. Wymore, 560 P.2d 868, 869-70 (Idaho 1977). The indecency laws in those cases only make it unlawful to "expose" the person or private parts — but do not go further and criminalize the "display" of the person or private parts, as does Code § 18.2-387.

- 5 -

N.Y.S.2d 758, 758 (N.Y. App. Div. 1992) (holding that robber displays a weapon by putting his hand inside his jacket and asking victim if it would "make a difference" if he had a gun).

Moses argues that this understanding of display has been foreclosed by prior Virginia cases. The cases he relies upon, however, do not once mention or discuss the word display as used in Code § 18.2-387. See, e.g., Wicks v. Charlottesville, 215 Va. 274, 274-75, 208 S.E.2d 752, 753-54 (1974) (interpreting local ordinance stating that no "person shall *expose* himself"); Noblett v. Commonwealth, 194 Va. 241, 72 S.E.2d 241 (1952) (affirming a conviction on an indictment alleging that the defendant *exposed* himself); Siquina v. Commonwealth, 28 Va. App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998) (interpreting the indecent liberties statute, which forbids *exposing* one's sexual or genital parts to a child). They instead focus entirely on the meaning of "expose."[4]

Properly understood, every visible exposure of one's genitals necessarily involves a display of one's genitals. But that does not prove the reverse: that every display necessarily includes an exposure. Hence, a robber can still display a handgun in his pocket while not exposing it to sight. So too a man masturbating in public can still display his "person" or "private parts" while not exposing his penis to sight. We thus reject Moses's claim that the display-or-exposure formulation in Code § 18.2-387 codifies a mere semantic redundancy, a pairing of interchangeable synonyms.

---

[4] Under Virginia law, *stare decisis* does not "foreclose inquiry" into an issue not previously "raised, discussed, or decided." Chesapeake Hosp. Auth. v. Commonwealth, 262 Va. 551, 560, 554 S.E.2d 55, 59 (2001); see also Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 639-40, 593 S.E.2d 568, 574 (2004).

- 6 -

III.

  The trial court found Moses's public masturbation to be an obscene "display" of his "person, or the private parts thereof" in violation of Code § 18.2-387. This conclusion cannot be set aside simply because Moses made this display while fully clothed.

Affirmed.

Benton, J., with whom Fitzpatrick, C.J., and Elder, J., join, dissenting.

The sole issue in this case is whether the evidence was sufficient to prove the offenses charged in the arrest warrant: that on two occasions Kenneth Samuel Moses "did unlawfully in violation of [Code §] 18.2-387 . . . intentionally make an obscene display of [his] person or private parts in a public place or in a place where a child under the age of 18 years and others were present." Because I believe that Code § 18.2-387 codified the common law's understanding of "expose" and "display" to mean without clothes, I do not believe Moses's behavior falls within the purview of the statute. I would, therefore, reverse the misdemeanor convictions.

I.

This issue, whether Moses's conduct fell within the purview of the statute, was clouded in this case from the beginning. At the bench trial, the prosecutor informed the judge as follows in his opening statement:

> [W]e must tell the Court that *the only issue before the Court from the Commonwealth's perspective is does the defendant's conduct constitute indecent exposure of his person* as opposed to his private parts.
>
> Judge, that issue is not decided in the Commonwealth, what does it mean to expose your person. The Commonwealth does have a case from Iowa in 1977. That's the only jurisdiction that we found that provides some insight. I will tell you that that case is contrary to the Commonwealth's position. Iowa said if you don't expose the actual skin itself, there is no indecent exposure. This issue is not decided in the Commonwealth of Virginia. We're going to ask the Court to basically make some law today. And I believe [Moses's attorney] will argue that point.

(Emphasis added).

Moses's attorney responded, in part, as follows:

> Judge, if you're going to make law today, I would submit to you it's going to be bad law. Because what [the prosecutor] is saying is if someone goes up, a male usually, in most cases it's going to be a male, goes up and just scratches at his crotch area because he has an itch to scratch or something like that, that could possibly be considered to be exhibiting something.

- 8 -

> And I would submit to the Court that can't be the case. It
> would just be too easy for too many people to say I saw him grab
> his genital area. Without -- our position is that without exposure of
> actual flesh, that that's -- there is no conviction. Just rubbing parts
> of your clothing should not be a crime. You know, you can't
> protect people from -- we would submit you can't protect people
> from everything bad that's going to happen. While this event
> shouldn't have been done, it wasn't in good taste, it obviously
> shouldn't have been done, we don't think it meets the meaning of a
> crime under the law.

At trial, a ten-year-old girl testified that when Moses began a conversation with her in a

store he had his hands in his pants as he talked to her. She saw "his hand through his pants" and

said his hand was rubbing his penis. She also testified that she did not see the "shape of his penis

under his clothes." The eleven-year-old girl testified she saw Moses in another store on another

occasion behind a display rack. He was looking at her and "rubbing himself . . . [i]n his private

area." She described it as the place "around his waist." She told her mother "that . . . man was

adjusting himself."

At the conclusion of the evidence, the prosecutor argued several points, including the

assertion "that the statute is contemplating types of displays or exposures where private parts of

an individual are not seen. And that's why the statute has person or private parts." Moses's

attorney argued that if the statute "taken to mean an obscene display, there certainly are no

standards for deciding what a display is[, and in] our opinion -- we would argue in this case that

a display is not something you can decide." He also argued that the statute required proof that

the defendant "actually exposed some skin."

In pertinent part, the trial judge found the evidence regarding the misdemeanor charges to

prove the following conduct:

> And this fact finder is going to find that the conduct of Mr.
> Moses was not acceptable in our community and that it violates the
> standards of sexual candor. It's clear that he was grabbing his
> parts when he approached these two young girls in Wal-Mart and
> Kmart. And that one girl testified he had his hand in his pants as if

- 9 -

> he were manipulating himself or masturbating himself. And the
> other girl testified he was grabbing his parts and looking at her.
> And that's not the same as if you see a baseball player or football
> player or somebody else sometimes may grab their parts.

## II.

Code § 18.2-387 provides as follows:

> Every person who intentionally makes an obscene display or
> exposure of his person, or the private parts thereof, in any public
> place, or in any place where others are present, or procures another
> to so expose himself, shall be guilty of a Class 1 misdemeanor. No
> person shall be deemed to be in violation of this section for
> breastfeeding a child in any public place or any place where others
> are present.

## (A)

The evidence failed to prove the conduct charged in the warrant: that Moses displayed

his private parts. He outwardly exhibited nothing, not even a visible outline of his private parts.

The testimony of both children establishes that they did not see his private parts. Although one

child testified that Moses rubbed his penis, she expressly testified that she saw no objective

physical manifestation of his penis. She saw his "hands through his pants." The other child was

less specific, testifying only he was "rubbing himself . . . [i]n his private area." Addressing

Moses's conduct, the trial judge only found that he was "grabbing his parts."

Although, in both instances, the testimony established movement of Moses's hand in his

"private area," this evidence failed to prove either "an obscene *display* . . . of his person, or the

private parts thereof." Code § 18.2-387 (emphasis added). Absent proof that either of the girls

saw or was reasonably likely to have seen Moses's genitals, at least partially uncovered, the

evidence failed to prove Moses's behavior came within the conduct charged by the warrant,

regardless of the intent with which Moses acted.

- 10 -

(B)

Furthermore, my review of the language of the statute itself and the common law of indecent exposure compels the conclusion that the words "display" and "exposure" as used in Code § 18.2-387 codify the common law and that the statute applies only when the body part in question was exposed without clothing and likely to be seen. See also 1960 Va. Acts, ch. 233 (first enacting Code § 18.1-236, the predecessor statute, which proscribed the same behavior, "obscene display or exposure," as Code § 18.2-387).

The structure of the statute itself establishes that the legislature intended the term "display" to be synonymous with the term "exposure." The legislature used the terms "display or exposure" in the first part of the statute to proscribe the behavior in which an individual may not himself or herself engage, but it used only the term "exposure" in the second half of the statute to set out the behavior in which an individual may not "procure" another to engage. It would be anomalous under the language of this statute to hold that the legislature intended to punish a defendant for engaging in either of two types of behavior himself but to punish him for enticing someone else to engage in only one of those two types of behavior. A court must construe the challenged statute "from its four corners and not by singling out particular words or phrases." Smith v. Commonwealth, 8 Va. App. 109, 113, 379 S.E.2d 374, 376 (1989). "If the several provisions of a statute suggest a potential for conflict or inconsistency, we construe those provisions so as to reconcile them and to give full effect to the expressed legislative intent." Mejia v. Commonwealth, 23 Va. App. 173, 176-77, 474 S.E.2d 866, 868 (1996) (en banc). Furthermore, the rule of lenity requires that penal statutes "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983); see also Richardson v. Commonwealth, 25 Va. App. 491, 496, 489 S.E.2d 697, 700 (1997) (holding that "[w]here the

- 11 -

application and enforcement of the criminal law is at issue, any ambiguity shall be resolved against the Commonwealth and in favor of the accused"). Thus, absent a clear legislative intent to the contrary, principles of statutory construction compel a conclusion that the legislature intended a "display" in violation of the statute also requires an "exposure."[5]

Code § 18.2-387 is a codification of the common law, continuing the ban against indecent exposure.[6] The language used by the legislature in enacting the successive code sections that have proscribed indecent exposure fail to support the conclusion that the legislature intended to change the common law when it used the word "display" in its enactment of Code § 18.2-387. Here, the legislature adopted the common law's "precise, well defined meaning" of indecent

---

[5] An analogy between the use of the term "display" in the indecent exposure statute and Code § 18.2-53.1, which proscribes "display[ing]" a firearm in a threatening manner during the commission of certain felonies, is inapt for two reasons.

First, the Virginia cases construing the firearms statute to hold a weapon was displayed to a victim through a sense other than actual sight involved the sense of touch. See, e.g., Cromite v. Commonwealth, 3 Va. App. 64, 67-68, 348 S.E.2d 38, 40 (1986) (involving a robber who approached the victim with his hand in his pocket and "stuck something ['hard'] in his stomach . . . that 'felt . . . like a pistol'"). Here, Moses's conduct did not involve tactile experiences. Rather, they involved only sight of hand movement.

Second, the evils at which the two statutes are directed are entirely different. The presence of a firearm as an aid to a felony may be just as effective even where the firearm is not displayed visually; one need not see a firearm in order to be motivated by fear of the potential harm it represents. See id. In the case of indecent exposure, however, the core of the offense is just that--the exposure itself, coupled with the related shock and embarrassment, People v. Massicot, 118 Cal. Rptr. 2d 705, 711-12 (Cal. Ct. App. 2002), rather than the fear that it represents some intent to do physical harm to the victim. Other statutes criminalize sexual behavior that threatens direct physical contact or harm. As a result, what it means to display a firearm during the commission of a felony has little or no relevance to determining what types of displays violate the indecent exposure statute.

[6] Indeed, Code § 18.2-387 is titled "Indecent exposure." Although the title of a statute is for "informative convenience," Good v. Commonwealth, 155 Va. 996, 999-1000, 154 S.E. 477, 478 (1930), it is of use for interpretative purposes if it "shed[s] light on some ambiguous word or phrase." Trainmen v. Baltimore & Ohio R. Co., 331 U.S. 519, 528-29 (1947). See also Almendarez-Torres v. United States, 523 U.S. 224, 234 (1998) ("not[ing] that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute"). As noted earlier in this opinion, the statutory language suggests a potential for inconsistency that must be reconciled.

- 12 -

exposure. <u>Wicks v. City of Charlottesville</u>, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974)

(interpreting a local ordinance containing the term "indecently expose").

> "[T]he best construction of [a] statute is[] to construe it as near to
> the reason of the common law as may be . . . ." The reason is that
> the Legislature is presumed to have known and to have had the
> common law in mind in the enactment of a statute. The statute
> must therefore be read along with the provisions of the common
> law, and the latter will be read into the statute unless it clearly
> appears from express language or by necessary implication that the
> purpose of the statute was to change the common law.

<u>Id.</u> (quoting <u>Chichester v. Vass</u>, 5 Va. (1 Call) 83, 102 (1797)). Thus, where the statute has not

expressly or by necessary implication changed the common law, we must assume the common

law definitions apply. <u>See</u> <u>People v. Massicot</u>, 118 Cal. Rptr. 2d 705, 711 (Cal. Ct. App. 2002)

(holding that the common law targeted genital exposure, therefore, in the "absence of express

definitions, . . . we may construe the statute to encompass indecent exposure as it was defined at

common law" (citing 2A J.G. Sutherland, <u>Statutes and Statutory Construction</u> § 50.03, at 435

(Norman J. Singer ed., 4th ed. 1984)). Further, penal statutes "must be strictly construed against

the state and limited in application to cases falling clearly within the language of the statute."

<u>Turner</u>, 226 Va. at 459, 309 S.E.2d at 338.

    At common law, a conviction for indecent exposure required proof that the accused

intentionally exposed private parts in a manner that they could reasonably have been seen by

members of the public. <u>Noblett v. Commonwealth</u>, 194 Va. 241, 244-46, 72 S.E.2d 241, 243-44

(1952) (citing definitions indicating the offense is committed where the "'act is seen or is likely

to be seen'" (quoting 67 C.J.S. <u>Obscenity</u> § 5, at 25 (1950)). Indecent exposure statutes from

other states "have generally adopted the common law requirements of the offense of indecent

exposure; to convict someone of indecent exposure, there must be shown a wilful and intentional

exposure of the private parts of the body." 50 Am. Jur. 2d <u>Lewdness, Indecency, and Obscenity</u>

§ 17, at 291-92 (1995). Thus, courts typically have held that "[i]ndecent exposure at common

- 13 -

law consists of exposure in public of the entire person or of parts that should not be exhibited." State v. Chiles, 767 P.2d 597, 599 (Wash. App. 1989); see also Massicot, 118 Cal. Rptr. 2d at 713. Significantly, the Supreme Court of Virginia has recognized a definition of common law "indecent exposure" that requires "'[e]xposure *to sight*.'" Wicks, 215 Va. at 276, 208 S.E.2d at 754 (quoting Black's Law Dictionary 909 (4th ed. 1951) (emphasis added)).

Black's Law Dictionary, which is referenced in Wicks, treats the terms "exposure" and "display" as synonymous, defining "indecent *exposure*" as "[a]n offensive *display* of one's body in public, esp. of the genitals. Cf. Lewdness . . . ." Black's Law Dictionary 773 (7th ed. 1999) (emphases added); see also Noblett, 194 Va. at 245, 72 S.E.2d at 243-44 (referring to exposure as an "exhibition"); Black's, supra, at 595 (defining "exhibitionism" as an "indecent *display* of one's body" (emphasis added)); Massicot, 118 Cal. Rptr. 2d at 712 (noting that conduct sought to be prohibited by common law indecent exposure was "exhibitionism," which it defined as "the *display* of the male genital organs for sexual gratification" (emphasis added)). The Oregon Court affirmed a conviction in State v. Ciancanelli, 45 P.3d 451 (Or. App. 2002), involving an act of masturbation that exposed the person's genitalia. It was in this context that the court discussed the framers' intentions and noted "that eighteenth-and nineteenth-century statutes and case law reflect the widespread -- if not universal -- regulation of public exposure of the genitals." Id. at 459.

Moreover, our adoption of just such a definition of "expose" in Siquina v. Commonwealth, 28 Va. App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998) (construing the portion of Code § 18.2-370 that proscribed "knowingly and intentionally 'expos[ing] [one's] sexual or genital parts to any child'"), underscores the conclusion that the General Assembly codified the common law requirement. Noting that the dispositive issue was whether the indecent liberties statute required that the child actually see the perpetrator's genitals, we held,

- 14 -

based on analogy to the common law and the Supreme Court's interpretation of it in Noblett and Wicks, that actual viewing was not required, but that the evidence had to prove the genitals were "seen or likely to be seen." Siquina, 28 Va. App. at 698-99, 508 S.E.2d at 352-53.[7] In doing so, we conducted an extended analysis of the "origin and contemporary definition of the verb 'expose'":

> "Expose" originated as an adaptation of the Latin verb "exponere," which includes the following definitions: 1) to put or bring out into the open, or 2) to put on show or *display*. 5 The Oxford English Dictionary 578 (2d ed. 1989); Oxford Latin Dictionary 651 (1982). Today, the definition has remained true to its roots. Webster's Third New International Dictionary 802 (1981), defines "expose" as "to lay open to view." In Black's Law Dictionary 579 (6th ed. 1990), "expose" is defined as: "To show publicly; *to display*; to offer to the public view . . . ." Black's definition of "indecent exposure" is also instructive: "This term refers to exhibition of those private parts which . . . human decency . . . require[s] shall be kept covered in [the] presence of others. Exposure . . . becomes indecent when it occurs at such time and place where [a] reasonable person knows or should know his act [may be viewed by] others." Id. at 768.

Siquina, 28 Va. App. at 697-98, 508 S.E.2d at 352 (emphases added); see also Brooker v. Commonwealth, 41 Va. App. 609, 616, 587 S.E.2d 732, 735 (2003) (adopting Siquina's definition of "expose").

Thus, I would hold that the statutory language and the common law history require that an accused actually render visible or cause to be seen or likely to be seen the body or the

---

[7] Wicks and Siquina suggest that we need to have an actual display of a person's genitalia in order to find conduct sufficient to convict for indecent exposure under Code § 18.2-387. The facts in Wicks showed that while the police officer "could not be certain that he had actually seen the defendant's organ because his hand was covering it," the officer did testify that he saw the defendant "holding his hand in front of his trousers and . . . urinating" as he walked. 215 Va. at 275 n.1, 208 S.E.2d at 754 n.1. Thus, the defendant's conduct supported an inference beyond a reasonable doubt that the defendant's genitalia was actually exposed. Furthermore, in Siquina, while the child did not see the defendant's genitalia, the child's mother saw the defendant in the bathroom with her child and saw the defendant's erect penis. 28 Va. App. at 697, 508 S.E.2d at 352. Although Siquina dealt with Code § 18.2-370, taking indecent liberties with a child, the facts also showed that actual exposure of genitalia did occur.

- 15 -

proscribed part. The statute requires proof of some degree of nudity of the body or the private parts of the body under circumstances denoting obscenity and satisfying the other statutory requirements. Cf. Copeland v. Commonwealth, 31 Va. App. 512, 515-16, 525 S.E.2d 9, 10-11 (2000) (holding that evidence of defendant's exposing his genitals and being visibly aroused in a woman's backyard was sufficient to support conviction for indecent exposure); Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000) (holding evidence of defendant's exposing his erect penis and masturbating outside a lighted window sufficient to convict for indecent exposure).

### III.

The statute is not a general bar to a person's conducting himself or herself in an indecent or offensive manner. Thus, for example, the statute obviously does not purport to proscribe tight pants or sweaters or other garments that opaquely clothe the body but leave some portion of the population offended due to sensitivity about the tightness of the garment. It does not, by its terms, bar hand gestures that might be considered offensive. Indeed, nothing in the statutory words, when given their meanings in ordinary parlance, bars a person from the mere act of rubbing or "grabbing" himself or herself without proof of more. The statute does not bar indecent conduct that does not expose parts of the body. See, e.g., State v. Jaime, 236 A.2d 474, 475 (Conn. Cir. Ct. 1967) (holding that defendant's "shaking his hand in his pelvic region" and exposing white underpants was insufficient to support a conviction for violating statute prohibiting "wantonly and indecently expos[ing] his person"); State v. Wymore, 560 P.2d 868, 869-70 (Idaho 1977) (holding that a statute barring a person from "publicly expos[ing] his person or his genitals" does not reach obscene gestures and comments where the accused did not expose his private parts).

- 16 -

Moses is serving a ten-year sentence, with four years suspended on various conditions, for the felony of taking indecent liberties with a child pursuant to Code § 18.2-370. Further, the prosecutor obviously selected among the various other statutes under which Moses could have been prosecuted in deciding how to proceed. See, e.g., Code § 18.2-67.3 (proscribing aggravated sexual battery); Code § 18.2-67.4 (proscribing sexual battery); Code § 18.2-370(1) (proscribing indecent liberties with children); see also Code § 18.2-26 (proscribing *attempts* to commit noncapital felonies). See also Jaime, 236 A.2d at 475-76 (holding defendant's "shaking his hand in his pelvic region" and exposing white underpants did not violate indecent exposure statute but might amount to disorderly conduct). If any gaps exist in the types of behavior the various statutes proscribe, it is the job of the legislature, not the courts, to fill those gaps. See, e.g., United States v. Statler, 121 F. Supp.2d 925, 927 & n.6 (E.D. Va. 2000) (holding "there is little doubt that masturbation in a public bathroom, if proven, fits well within *the federal regulation* proscribing 'a display or act that is obscene'" but emphasizing that the federal regulation is "*broader* than . . . the Virginia indecent exposure statute" because the Virginia statute "requires a display or exposure of parts of one's body [whereas the federal regulation] does not" (emphases added)); see also Ohio Rev. Code Ann. § 2907.09 (2004) (proscribing public indecency, which it defines to include "recklessly" "(1) [e]xpos[ing] his or her private parts, or engag[ing] in masturbation; (2) [e]ngag[ing] in sexual conduct; [or] (3) [e]ngaging in conduct that to an ordinary observer would appear to be sexual conduct or masturbation"); Duvallon v. District of Columbia, 515 A.2d 724, 725 n.1 (D.C. 1986) (analyzing conviction for indecent exposure under statute making it unlawful "for any person or persons to make any obscene or indecent exposure of his or her person, *or* to make any other lewd, obscene, or indecent sexual proposal, *or* to commit any other lewd, obscene, or indecent act" (emphases added)); State v. Ovitt, 535 A.2d 1272, 1275-76 (Vt. 1986) (under statute proscribing "open and gross lewdness and lascivious

- 17 -

behavior" without further defining that offense, holding evidence sufficient to support conviction where defendant masturbated publicly through clothing but did not expose his genitals).

The dispositive issue in this case is whether Moses's behavior constituted a "display or exposure of his person, or the private parts thereof," analogizing to the common law definition of that offense. I would hold it did not, and I would reverse both misdemeanor convictions.

Tuesday                14th

September, 2004.

Kenneth Samuel Moses,                                              Appellant,

against        Record No. 0985-03-3
               Circuit Court Nos. CR02014083-00, CR02014116-00
               and CR02014116-01

Commonwealth of Virginia,                                          Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner,
Frank, Humphreys, Clements, Felton, Kelsey and McClanahan

On August 23, 2004 came the appellee, by the Attorney General of Virginia, and filed a
petition praying that the Court set aside the judgment rendered herein on August 10, 2004, and
grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate
entered herein on August 10, 2004 is stayed pending the decision of the Court *en banc*, and the
appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as
an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously
rendered by the Court in this matter. It is further ordered that the appellee shall file with the
clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

                                       Cynthia L. McCoy, Clerk
               By:
                                       Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Kelsey
Argued at Salem, Virginia

KENNETH SAMUEL MOSES

v.     Record No. 0985-03-3

OPINION BY
JUDGE JAMES W. BENTON, JR.
AUGUST 10, 2004

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge

Eric G. Peters, Sr., for appellant.

Deana A. Malek, Senior Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.

The trial judge convicted Kenneth Samuel Moses of the felony of taking indecent

liberties with a child, Code § 18.2-370, and two misdemeanor counts of making an obscene

display or exposure of his person in violation of Code § 18.2-387. Moses contends the evidence

was insufficient to support the misdemeanor convictions. We agree, and we reverse both

misdemeanor convictions.

I.

The evidence proved a ten-year-old girl was in a department store with her mother and

her brother in August of 2001, when she saw Moses walking among the aisles. Later, in the

check-out line, Moses began a conversation with the girl. Moses told the girl she was very

beautiful and told her he thought other people must have said this to her. The girl testified that

Moses had his hands in his pants as he talked to her. She saw "his hand through his pants" and

said his hand was rubbing his penis. She also testified that she did not see the "shape of his penis

under his clothes." When the girl's mother arrived, the girl left the store with her mother and brother. Outside the store, the girl reported the incident to her mother.

In December of 2001, an eleven-year-old girl was in another department store with her mother. The girl saw Moses behind a display rack looking at her and "rubbing himself . . . [i]n his private area." She told her mother "that . . . man was adjusting himself." After her mother paid for merchandise, she momentarily walked away from the girl. Moses approached the girl when she was alone near the entrance and "told [her] that [she] was a pretty little girl and . . . asked how [her] butt felt." Later, in the parking lot, the girl reported the conversation to her mother.

The trial judge convicted Moses of two offenses of violating Code § 18.2-387.[1]

## II.

Code § 18.2-387 provides as follows:

> Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor. No person shall be deemed to be in violation of this section for breastfeeding a child in any public place or any place where others are present.

The evidence proved Moses's conduct was indecent, but we hold that the evidence failed to prove either "an obscene *display* . . . of his person, or the private parts thereof" or "an obscene . . . *exposure* of his person, or the private parts thereof." Code § 18.2-387 (emphases added). Our review of the common law of indecent exposure and the language of the statute itself compels the conclusion that the words "display" and "exposure" as used in Code § 18.2-387 are

---

[1] We do not describe the evidence supporting the felony conviction because those events occurred on a separate occasion and are not germane to the issues on this appeal. Furthermore, because Moses does not challenge the sufficiency of the evidence to prove he acted intentionally, we also need not review as an issue on appeal that aspect of the misdemeanor convictions.

- 2 -

synonymous and that the statute applies only when the body part in question was clearly visible without clothing or was exposed without clothing and likely to be seen.[2] See also 1960 Va. Acts, ch. 233 (first enacting Code § 18.1-236, the predecessor statute, which proscribed the same behavior, "obscene display or exposure," as Code § 18.2-387).

"The term 'indecent exposure' had a precise, well defined meaning at common law . . . ." Wicks v. City of Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974) (interpreting a local ordinance containing the term "indecently expose").

> "[T]he best construction of [a] statute is[] to construe it as near to the reason of the common law as may be . . . ." The reason is that the Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.

Id. (quoting Chichester v. Vass, 5 Va. (1 Call.) 83, 102 (1797)); see People v. Massicot, 118 Cal. Rptr. 2d 705, 711 (Cal. Ct. App. 2002) (holding that in the "absence of express definitions, . . . we may construe the statute to encompass indecent exposure as it was defined at common law" (citing 2A J.G. Sutherland, Statutes and Statutory Construction, § 50.03, at 435 (Norman J. Singer ed., 4th ed. 1984))). Further, penal statutes "must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). Both the history of the common law offense of indecent exposure and the language used by the legislature in enacting the successive code sections that have proscribed indecent exposure fail to support the conclusion

---

[2] No evidence established that Moses's covered penis was visible in outline form through his clothing in either of the incidents at issue. Thus, we need not consider whether such behavior would constitute a "display or exposure" in violation of Code § 18.2-387.

- 3 -

that the legislature intended to change the common law when it used the word "display" in its enactment of Code § 18.2-387.

At common law, indecent exposure involved intentionally exposing one's private parts in a manner that same could reasonably have been seen by members of the public.[3] Noblett v. Commonwealth, 194 Va. 241, 244-46, 72 S.E.2d 241, 243-44 (1952) (citing definitions indicating the offense is committed where the "'act is seen or is likely to be seen'" (quoting 67 C.J.S. Obscenity § 5, at 25 (1950))). The Supreme Court of Virginia has recognized a definition of common law "indecent exposure" that requires "'[e]xposure *to sight*.'" Wicks, 215 Va. at 276, 208 S.E.2d at 754 (quoting Black's Law Dictionary 909 (4th ed. 1951) (emphasis added)). Black's Law Dictionary, which is referenced in Wicks, treats the terms "exposure" and "display" as synonymous, defining "indecent *exposure*" as "[a]n offensive *display* of one's body in public, esp. of the genitals. Cf. Lewdness . . . ." Black's Law Dictionary 773 (7th ed. 1999) (emphases added); see also Noblett, 194 Va. at 245, 72 S.E.2d at 243-44 (referring to exposure as an "exhibition"); Black's, supra, at 595 (defining "exhibitionism" as an "indecent *display* of one's body" (emphasis added)); Massicot, 118 Cal. Rptr. 2d at 712 (noting that conduct sought to be prohibited by common law indecent exposure was "exhibitionism," which it defined as "the *display* of the male genital organs for sexual gratification" (emphasis added)).

We adopted just such a definition of "expose" in Siquina v. Commonwealth, 28 Va. App. 694, 697-99, 508 S.E.2d 350, 352-53 (1998), where we construed the portion of Code § 18.2-370, proscribing "knowingly and intentionally 'expos[ing] [one's] sexual or genital parts

---

[3] Indecent exposure "[s]tatutes have generally adopted the common law requirements of the offense of indecent exposure; to convict someone of indecent exposure, there must be shown a wilful and intentional exposure of the private parts of the body." 50 Am. Jur. 2d Lewdness, Indecency, and Obscenity § 17, at 291-92 (1995). Thus, courts typically have held that "[i]ndecent exposure at common law consists of exposure in public of the entire person or of parts that should not be exhibited." States v. Chiles, 767 P.2d 597, 599 (Wash. App. 1989); see also Massicot, 118 Cal. Rptr. 2d at 713.

- 4 -

to any child.'" Noting that the dispositive issue was whether the indecent liberties statute required that the child actually see the perpetrator's genitals, we held, based on analogy to the common law and the Supreme Court's interpretation of it in Noblett and Wicks, that actual viewing was not required, but that the evidence had to prove the genitals were "seen or likely to be seen." Siquina, 28 Va. App. at 698-99, 508 S.E.2d at 352-53. In doing so, we conducted an extended analysis of the "origin and contemporary definition of the verb 'expose'":

> "Expose" originated as an adaptation of the Latin verb "exponere," which includes the following definitions: 1) to put or bring out into the open, or 2) to put on show or *display*. 5 The Oxford English Dictionary 578 (2d ed. 1989); Oxford Latin Dictionary 651 (1982). Today, the definition has remained true to its roots. Webster's Third New International Dictionary 802 (1981), defines "expose" as "to lay open to view." In Black's Law Dictionary 579 (6th ed. 1990), "expose" is defined as: "To show publicly; *to display*; to offer to the public view . . . ." Black's definition of "indecent exposure" is also instructive: "This term refers to exhibition of those private parts which . . . human decency . . . require[s] shall be kept covered in [the] presence of others. Exposure . . . becomes indecent when it occurs at such time and place where [a] reasonable person knows or should know his act [may be viewed by] others." Id. at 768.

Id. at 697-98, 508 S.E.2d at 352 (emphases added); see also Brooker v. Commonwealth, 41 Va. App. 609, 616, 587 S.E.2d 732, 735 (2003) (adopting Siquina's definition of "expose").

The structure of the statute itself also fails to establish that the legislature did not intend the term "display" to be synonymous with the term "exposure." The legislature used the terms "display or exposure" in the first part of the statute to proscribe the behavior in which an individual may not himself or herself engage, but it used only the term "exposure" in the second half of the statute to set out the behavior in which an individual may not "procure" another to engage. It would be anomalous under the language of this statute to hold that the legislature intended to punish a defendant for engaging in either of two types of behavior himself but to punish him for enticing someone else to engage in only one of those two types of behavior. A

- 5 -

court must construe the challenged statute "from its four corners and not by singling out particular words or phrases." Smith v. Commonwealth, 8 Va. App. 109, 113, 379 S.E.2d 374, 376 (1989). "If the several provisions of a statute suggest a potential for conflict or inconsistency, we construe those provisions so as to reconcile them and to give full effect to the expressed legislative intent." Mejia v. Commonwealth, 23 Va. App. 173, 176-77, 474 S.E.2d 866, 868 (1996) (*en banc*). "[A] statute should never be construed so that it leads to absurd results." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). Absent a clear legislative intent to the contrary, principles of statutory construction compel us to conclude the legislature intended that a "display" in violation of the statute also requires an "exposure."[4]

Thus, by its plain terms, the statute requires that the accused actually render visible or cause to be seen or likely to be seen the body or the proscribed part. The statute requires proof of some degree of nudity of the body or the private parts of the body under circumstances

---

[4] An analogy between the use of the term "display" in the indecent exposure statute and Code § 18.2-53.1, which proscribes "display[ing]" a firearm in a threatening manner during the commission of certain felonies, is inapt for two reasons.

First, the Virginia cases construing the firearms statute to hold a weapon was displayed to a victim through a sense other than actual sight involved the sense of touch. See, e.g., Cromite v. Commonwealth, 3 Va. App. 64, 67-68, 348 S.E.2d 38, 40 (1986) (involving a robber who approached the victim with his hand in his pocket and "stuck something ['hard'] in his stomach . . . that 'felt . . . like a pistol'"). Here, Moses's conduct did not involve tactile experiences. Rather, they involved only vague visual manifestations not proved sufficient to show even the outline of a penis beneath his trousers. See *supra* footnote 2.

Second, the evils at which the two statutes are directed are entirely different. The presence of a firearm as an aid to a felony may be just as effective even where the firearm is not displayed visually; one need not see a firearm in order to be motivated by fear of the potential harm it represents. See Cromite, 3 Va. App. at 67-68, 348 S.E.2d at 40. In the case of indecent exposure, however, the core of the offense is just that--the exposure itself, coupled with the related shock and embarrassment, Massicot, 118 Cal. Rptr. 2d at 711-12, rather than the fear that it represents some intent to do physical harm to the victim. Other statutes criminalize sexual behavior that threatens direct physical contact or harm. As a result, what it means to display a firearm during the commission of a felony has little or no relevance to determining what types of displays violate the indecent exposure statute.

denoting obscenity and satisfying the other statutory requirements.[5]  Cf. Copeland v.

Commonwealth, 31 Va. App. 512, 515-16, 525 S.E.2d 9, 10-11 (2000) (holding that evidence of

defendant's exposing his genitals and being visibly aroused in a woman's backyard was

sufficient to support conviction for indecent exposure); Morales v. Commonwealth, 31 Va. App.

541, 543, 525 S.E.2d 23, 24 (2000) (holding evidence of defendant's exposing his erect penis

and masturbating outside a lighted window sufficient to convict for indecent exposure).

### III.

The evidence proved that Moses did not expose his genitalia or private parts to the

children on either occasion.[6]  The evidence proved Moses was fully clothed and exposed no part

of his body as proscribed by the statute.  Cf. Hart v. Commonwealth, 18 Va. App. 77, 80, 441

S.E.2d 706, 708 (1994) (holding that a man wearing "a skimpy G-string which covered only his

penis and anus, leaving his pubic area and buttocks exposed," violated the statute by

intentionally exposing in an obscene manner his pubic area and buttocks).  In both instances,

Moses rubbed his "private parts" beneath his clothing while looking at the girls and while in a

position where the girls could see his conduct.  In neither instance, however, did he cause to be

visible any part of his body that he rubbed.  One girl testified that she did not see the shape of his

---

[5] See *supra* footnote 2.

[6] Citing Wicks and Siquina, the dissent suggests that we do not need to have an actual
display of a person's genitalia in order to find conduct sufficient to convict for indecent exposure
under Code § 18.2-387.  The facts in Wicks showed, however, that while the police officer
"could not be certain that he had actually seen the defendant's organ because his hand was
covering it," the officer did testify that he saw the defendant "holding his hand in front of his
trousers and . . . urinating" as he walked.  215 Va. at 275 n.1, 208 S.E.2d at 754 n.1.  Thus, the
defendant's conduct supported an inference beyond a reasonable doubt that the defendant's
genitalia was actually exposed.  Furthermore, in Siquina, while the child did not see the
defendant's genitalia, the child's mother saw the defendant in the bathroom with her child and
saw the defendant's erect penis.  28 Va. App. at 697, 508 S.E.2d at 352.  Although Siquina dealt
with Code § 18.2-370, taking indecent liberties with a child, the facts also showed that actual
exposure of genitalia did occur.

- 7 -

penis as he rubbed it. The other girl testified only that he was standing behind a display rack "rubbing . . . his private area." She, likewise, did not see his genitalia.

The statute is not a general bar to a person's conducting himself or herself in an indecent or offensive manner. Thus, for example, the statute obviously does not purport to proscribe tight pants or sweaters or other garments that opaquely clothe the body but leave some portion of the population offended due to sensitivity about the tightness of the garment. It does not, by its terms, bar hand gestures that might be considered offensive. Indeed, nothing in the statutory words, when given their meanings in ordinary parlance, bars a person from the mere act of rubbing himself or herself without proof of more. The statute bars "obscene" conduct, not indecent conduct that does not expose parts of the body. See, e.g., State v. Jaime 236 A.2d 474, 475 (Conn. Cir. Ct. 1967) (holding that defendant's "shaking his hand in his pelvic region" and exposing white underpants was insufficient to support a conviction for violating statute prohibiting "wantonly and indecently expos[ing] his person"); State v. Wymore, 560 P.2d 868, 869-70 (Idaho 1977) (holding that a statute barring a person from "publicly expos[ing] his person or his genitals" does not reach obscene gestures and comments where the accused did not expose his private parts).

This case is not about a disagreement over whether Moses's acts were rude, disgusting, or indecent. It also is not about freeing a pedophile. Moses is serving a ten-year sentence, with four years suspended on various conditions, for the felony of taking indecent liberties with a child pursuant to Code § 18.2-370. Further, the prosecutor obviously selected among the various other statutes under which Moses could have been prosecuted in deciding how to proceed. See, e.g., Code § 18.2-67.3 (proscribing aggravated sexual battery); Code § 18.2-67.4 (proscribing sexual battery); Code § 18.2-370(1) (proscribing indecent liberties with children); see also Code § 18.2-26 (proscribing *attempts* to commit noncapital felonies); Jaime, 236 A.2d at 475-76

- 8 -

(holding defendant's "shaking his hand in his pelvic region" and exposing white underpants did not violate indecent exposure statute but might amount to disorderly conduct). If any gaps exist in the types of behavior the various statutes proscribe, it is the job of the legislature, not the courts, to fill those gaps. See, e.g., United States v. Statler, 121 F. Supp. 2d 925, 927 & n.6 (E.D. Va. 2000) (holding "there is little doubt that masturbation in a public bathroom, if proven, fits well within *the federal regulation* proscribing 'a display or act that is obscene'" but emphasizing that the federal regulation is "*broader* than . . . the Virginia indecent exposure statute" because the Virginia statute "requires a display or exposure of parts of one's body [whereas the federal regulation] does not" (emphases added)); see also Ohio Rev. Code Ann. § 2907.09 (2004) (proscribing public indecency, which it defines to include "recklessly" "(1) [e]xpos[ing] his or her private parts, or engag[ing] in masturbation; (2) [e]ngag[ing] in sexual conduct; [or] (3) [e]ngaging in conduct that to an ordinary observer would appear to be sexual conduct or masturbation"); Duvallon v. District of Columbia, 515 A.2d 724, 725 n.1 (D.C. 1986) (analyzing conviction for indecent exposure under statute making it unlawful "for any person or persons to make any obscene or indecent exposure of his or her person, *or* to make any other lewd, obscene, or indecent sexual proposal, *or* to commit any other lewd, obscene, or indecent act" (emphases added)); State v. Ovitt, 535 A.2d 1272, 1275-76 (Vt. 1986) (under statute proscribing "open and gross lewdness and lascivious behavior" without further defining that offense, holding evidence sufficient to support conviction where defendant masturbated publicly through clothing but did not expose his genitals).

Thus, the dispositive issue in this case is whether Moses's behavior constituted "an obscene display . . . of his person, or the private parts thereof" or "an obscene . . . exposure of his person, or the private parts thereof," analogizing to the common law definition of that offense. Absent proof that either of the girls saw or was reasonably likely to have seen Moses's genitals,

- 9 -

at least partially uncovered, the evidence was insufficient to support the convictions under the

particular statute at issue in this case, regardless of the intent with which Moses acted.[7]  It is our

job to interpret and apply the laws the legislature has enacted.[8]  For these reasons, we reverse

both misdemeanor convictions.

Reversed and dismissed.

---

[7] Although the dissent contends otherwise, our present holding, in conjunction with existing case law, does not compel the conclusion that a female swimmer wearing a thong bathing suit violates the indecent exposure statute whereas a man masturbating beneath his trench coat does not.  The indecent exposure statute requires both a proscribed act and a particular intent.  Our decision in Hart involved not a swimmer at the beach but a man in an office supply store who wore Velcro shorts which he dropped to reveal a "real skimpy," "form-fitting" "G-string" that showed the outline of his penis and provided no coverage for his remaining pubic area and buttocks. 18 Va. App. at 78, 441 S.E.2d at 706-07.  We held Hart violated the statute not only because his choice of attire "constituted 'an exposure of his person, or the private parts thereof,'" by exposing his groin and buttocks, but also because his behavior, including his suggestive statements to the store clerk about his G-string and shorts, his delay in putting his shorts back on, and his return to the store wearing the same shorts six days later, indicated an intent to make "an obscene display or exposure." Id. at 79-80, 441 S.E.2d at 707-08.

Thus, under Hart, a sunbather wearing a G-string swim suit at the beach might violate the "exposure" portion of the statute, but more would be required to prove she acted with the requisite intent.  In the case of a man masturbating in obvious fashion beneath his trench coat without exposing his person or private parts to public view, just the reverse would likely be true—the evidence would establish that his behavior was obscene but would not establish the requisite exposure of his person or private parts.  The possible existence of a gap in the statutes proscribing obscene and lewd behavior does not permit the judiciary to expand the scope of the offense of indecent exposure beyond its statutory and common law bounds.

[8] If, as the dissenter posits, Moses's case involves "a pedophile['s] masturbating in front of a young child as he tries to talk her into being his next victim," that was a matter for the Commonwealth to consider in determining what offenses to charge.  The failure to charge under the appropriate statute does not justify our upholding Moses's convictions for two counts of an offense the evidence does not prove he committed.

- 10 -

# Supplement 3

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Supplement in attachment to "PETITIONER'S SECOND MOTION FOR SANCTIONS
AND TO VACATE JUDGMENT THAT WAS IN PLAINTIFF'S/RESPONDENT'S
FAVOR -- MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF
REQUESTING THE HONORABLE COURT IN THIS CASE VACATE
FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS"

COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Alston and Senior Judge Willis
Argued at Alexandria, Virginia

A. M.*

v.     Record No. 1150-12-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION** BY
JUDGE RANDOLPH A. BEALES
FEBRUARY 12, 2013

FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
Dennis L. Hupp, Judge

D. Eric Wiseley (The Wiseley Law Firm, PLC, on briefs), for
appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

On September 29, 2011 A.M. (appellant) was convicted of the misdemeanor of indecent

exposure in violation of Code § 18.2-387 in the Juvenile and Domestic Relations District Court

of Shenandoah County. On appeal for a trial *de novo*, the Circuit Court for the County of

Shenandoah found appellant guilty of the same charge, and on February 15, 2012 sentenced him

to fifty hours of community service. Appellant argues on appeal that the trial court erred when it

found the evidence sufficient to convict him of indecent exposure, pursuant to Code § 18.2-387,

because the obscenity element of that statute was not satisfied. For the following reasons, we

reverse appellant's conviction.

---

* We use initials for the appellant and the juvenile witness in an attempt to protect their
identities, given that they are juveniles.

** Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

## I. BACKGROUND

Appellant, a fourteen-year-old middle school student, was a regular passenger on a school bus driven by Ms. Bridget Vance Keffer. Ms. Keffer had driven appellant's bus for two years, and she described his general conduct on her bus as "not very good, at times." She testified that he would throw papers, would not remain in his seat, and was loud sometimes. She noted, though, that "he's not the worst." Before June 8, 2011 (the date of the incident at issue), the record does not include any evidence of any overtones of sexuality in appellant's behavior toward Ms. Keffer.

Appellant's bus stop was near the end of the bus route. In fact, appellant's home was the second to last stop, such that when appellant got off the bus, the only other passenger left was another juvenile student, J.G. June 8, 2011 was the last day of school before summer vacation. Ms. Keffer testified that, on that date, when only J.G., appellant, and she were on the bus, "[appellant] made a comment to [her] that [she] had nice lips." Ms. Keffer testified that she did not respond because it was "[appellant's] last day, and [she] didn't even want to get into it with him."

A couple minutes later, the bus approached appellant's home. J.G. and appellant were sitting two or three seats behind Ms. Keffer. As appellant went to exit the bus by descending the steps, Ms. Keffer testified that he stopped and asked her, "Ms. Bridget, you want to know what the little piggy said all the way home?" Ms. Keffer responded, "No, [A.M.]. Just go home, have a good summer." Ms. Keffer testified that appellant then "stepped down on the second step on the bus, turned around, dropped his pants down to his . . . around his knees, and jumped off the bus, and ran up his lane, going wee, wee, wee." Ms. Keffer stated that she "did not see his privates," but did see his exposed buttocks.

- 2 -

Testifying for the Commonwealth, J.G. testified that he saw appellant get off the bus with his pants down, crying "wee, wee, wee, wee, wee . . . with the pig thing." Appellant had notified J.G. beforehand that he would get off the bus with his pants down. J.G. testified that appellant did not tell Ms. Keffer that he wanted to have any type of sexual relations with her. He also testified that appellant did not do anything overtly sexual during the incident. J.G. stated that he did not observe appellant flirt with Ms. Keffer or try to have any sexual contact with her. J.G. did not see anything in appellant's behavior that made him think appellant was making any sort of sexual overtures. J.G. did not hear the comment from appellant to Ms. Keffer, in which appellant said that she had "nice lips."

Appellant did not present any evidence. Appellant moved to strike the evidence. The trial court denied the motion to strike, and found appellant guilty as charged. A final order convicting appellant was entered on February 15, 2012, and this appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred when it found the evidence sufficient, as a matter of law, to convict appellant of indecent exposure, pursuant to Code § 18.2-387 – and argues specifically that the obscenity element of the statute was not satisfied.

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting

- 3 -

Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See

also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). The

Commonwealth's evidence must exclude every reasonable hypothesis of innocence. See

Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994).

Code § 18.2-387, the statute under which appellant was convicted, states:

> Every person who intentionally makes an *obscene* display or
> exposure of his person, or the private parts thereof, in any public
> place, or in any place where others are present, or procures another
> to so expose himself, shall be guilty of a Class 1 misdemeanor. No
> person shall be deemed to be in violation of this section for
> breastfeeding a child in any public place or any place where others
> are present.

(Emphasis added).

While "private parts" can include the buttocks, Hart v. Commonwealth, 18 Va. App. 77,

79, 441 S.E.2d 706, 707 (1994), Code § 18.2-387 does not criminalize mere exposure of a naked

body, see Price v. Commonwealth, 214 Va. 490, 493, 201 S.E.2d 798, 800 (1974) ("A portrayal

of nudity is not, as a matter of law, a sufficient basis for finding that [it] is obscene."). Instead, a

conviction under Code § 18.2-387 requires proof beyond a reasonable doubt of obscenity.

Code § 18.2-372 defines the word "obscene" accordingly:

> The word "obscene" where it appears in this article shall mean that
> which, considered as a whole, has as its *dominant theme or*
> *purpose an appeal to the prurient interest in sex*, that is, a
> shameful or morbid interest in nudity, sexual conduct, sexual
> excitement, *excretory functions or products thereof* or
> sadomasochistic abuse, and which goes substantially beyond
> customary limits of candor in description or representation of such
> matters and which, taken as a whole, does not have serious literary,
> artistic, political or scientific value.

(Emphasis added).

The "obscenity" element of Code § 18.2-387 may be satisfied when: (1) the accused

admits to possessing such intent, Moses v. Commonwealth, 45 Va. App. 357, 359-60, 611 S.E.2d

- 4 -

607, 608 (2005) (*en banc*); (2) the defendant is visibly aroused, Morales v. Commonwealth, 31

Va. App. 541, 543, 525 S.E.2d 23, 24 (2000); (3) the defendant engages in masturbatory

behavior, Copeland v. Commonwealth, 31 Va. App. 512, 515, 525 S.E.2d 9, 10-11 (2000); or

(4) in other circumstances when the totality of the circumstances supports an inference that the

accused had as his dominant purpose a prurient interest in sex.  See Jackson, 443 U.S. at 319.

Even with properly according the trial court's factfinding "with the highest degree of appellate

deference," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006), the

record here does not support the conclusion that appellant's conduct was obscene, as is defined

in Code § 18.2-372 and as required by Code § 18.2-387.  It was repulsive, disrespectful, and

inappropriate in every way – but not actually "obscene" as the General Assembly has defined the

meaning of that term in Code § 18.2-372.

    When the evidence is "considered as a whole," it is simply insufficient to prove beyond a

reasonable doubt that appellant's conduct was obscene as defined by Code § 18.2-372.  The

question on appeal is not whether a rational factfinder could infer a sexual aspect about

appellant's conduct.  Instead, the question is whether a rational factfinder could find that

appellant's conduct had, as its "*dominant* theme or purpose an appeal to the *prurient* interest in

sex, that is, a *shameful or morbid interest* in nudity, sexual conduct, sexual excitement, excretory

functions or products thereof or sadomasochistic abuse."  Code § 18.2-372 (emphasis added).

    Here, the trial court found:

> I don't look at either incident--that is, the statement about the lips,
> the dropping of the pants--separately, and look at each of them in a
> vacuum.  You look at the total, the conduct as a package.  Here, he
> makes the comment about having pretty lips, and then, shortly
> thereafter, drops his pants.
>
> Now, I agree, making a comment to someone that you have pretty
> lips, standing alone, is not necessarily *a sexual comment*.  It
> depends on the circumstances surrounding it.  Dropping his pants,
> standing alone, perhaps would not have *a sexual content*.  But it is

- 5 -

> > the two acts together, in close proximity, that I think makes this a
> > violation of the statute.

(Emphasis added).

The trial court inferred that appellant's statement was "a sexual comment" and that

appellant's actions, considered as a whole, had "a sexual content." The trial court was entitled to

make these inferences. However, proof that appellant's actions had "a sexual content" is the

incorrect legal standard here and is an insufficient basis upon which to conclude that the

obscenity element of Code § 18.2-387 was satisfied beyond a reasonable doubt.

Even viewing the totality of the evidence in the light most favorable to the

Commonwealth, as we must since it was the prevailing party below, the trial court's conclusion

that appellant's conduct violated the *obscenity* element of Code § 18.2-387 was plainly wrong.

See Code § 8.01-680. Appellant's comment that Ms. Keffer had "nice lips" could have been a

sexual comment, as the trial court inferred, but that lone comment was not coupled by evidence

of any other statements[1] or actions demonstrating that the *dominant* theme of his conduct was a

*prurient* interest in sex – i.e., "a *shameful* or *morbid* interest" in, *inter alia,* "sexual conduct" or

"sexual excitement." Code § 18.2-372 (emphasis added). For example, nothing in the record on

appeal even suggests that appellant invited any sexual conduct with Ms. Keffer, hinted at any

sexual excitement on his part, or, when he dropped his pants upon exiting the bus (with his back

to Ms. Keffer and running away from her), displayed his sexual organs to her (or to anyone else).

In fact, Ms. Keffer testified that she "did not see his privates." Moreover, there was no evidence

that appellant had ever made sexual comments or acted in a sexual manner in the presence of

---

[1] The Commonwealth argues that appellant's statement as he mooned Ms. Keffer and ran
down the street – "wee, wee, wee" – referred to excretory functions under Code § 18.2-372.
While the trial court was entitled to make such an inference, it was plainly wrong to conclude
that the *dominant* theme of appellant's statement and conduct was a prurient interest in sex, as
required by Code § 18.2-372.

- 6 -

Ms. Keffer before June 8, 2011 (the date of the incident before us), which was the last day of school.

Appellant's conduct here certainly does not rise to the level that this Court found obscene in Hart. There, Hart entered an office supply store wearing a "G-string" swimsuit covered by short running shorts. 18 Va. App. at 78, 441 S.E.2d at 706. While a clerk waited on him, Hart pulled down his running shorts (or he allowed them to fall) to expose his pubic area and buttocks, while asking the clerk what she thought of "the whole picture." Id. at 78, 441 S.E.2d at 706. Hart told the clerk that he liked the Velcro on his shorts because it allowed for "easy access to women who wanted him." Id. at 78, 441 S.E.2d at 707. This Court held, that based on Hart's "statements, in conjunction with his actions . . . [t]he trial court was entitled to conclude that . . . his actions had as their dominant purpose an appeal to the prurient interest in sex as defined in the Code." Id. at 80, 441 S.E.2d at 707. The contrast between Hart's behavior and appellant's behavior is illustrative. Whereas the sexual nature of Hart's conduct was extremely overt, whatever sexual aspect of appellant's conduct, if any, could only be inferred.

The evidence fails to exclude the reasonable hypothesis that the dominant purpose of appellant's conduct – i.e., "mooning" Ms. Keffer two minutes after he told her she had "nice lips" – was to pull a "prank" on his bus driver on the last day of school – albeit an extremely inappropriate and repulsive one. Therefore, we find that a rational factfinder could not conclude that the fourteen-year-old appellant's statement and actions when "considered as a whole, [had as their] dominant theme or purpose an appeal to the prurient interest in sex." Code § 18.2-372. Consequently, he could not be found guilty under Code § 18.2-387.[2]

---

[2] On brief and during oral argument before this Court, appellant's counsel acknowledged that his client potentially was criminally culpable for disorderly conduct under Code § 18.2-415, but argued that the required "obscene" element was missing so that appellant could not be convicted of indecent exposure under Code § 18.2-387. Disorderly conduct, under Code § 18.2-415, is not a lesser-included offense of the misdemeanor of indecent exposure, under Code § 18.2-387.

- 7 -

In indecent exposure cases, the Commonwealth is also obliged to prove that the defendant's conduct violated "contemporary community standards of sexual candor." Morales, 31 Va. App. at 544, 525 S.E.2d at 24 (citing House v. Commonwealth, 210 Va. 121, 126, 169 S.E.2d 572, 576 (1969)). However, we do not need to reach the question of whether appellant's conduct violated "contemporary community standards of sexual candor" because we have concluded that the evidence simply cannot support the conclusion that appellant's behavior was obscene, as defined by Code § 18.2-372, and as required for conviction under Code § 18.2-387.

### III. CONCLUSION

Although appellant's behavior was certainly inappropriate and repulsive, it does not rise to the level of obscenity required under Code § 18.2-387, as defined in Code § 18.2-372. Accordingly, we must reverse the trial court's conviction of appellant under Code § 18.2-387.

Reversed and dismissed.

- 8 -

# Supplement 4

USWGO
QANON // DRAIN THE SWAMP
MAKE AMERICA GREAT AGAIN



UNITED STATES DISTRICT COURT CASE NO. 1:13-CR-435-1
MIDDLE DISTRICT OF NORTH CAROLINA

Supplement in attachment to "PETITIONER'S SECOND MOTION FOR SANCTIONS
AND TO VACATE JUDGMENT THAT WAS IN PLAINTIFF'S/RESPONDENT'S
FAVOR -- MOTION AND BRIEF / MEMORANDUM OF LAW IN SUPPORT OF
REQUESTING THE HONORABLE COURT IN THIS CASE VACATE
FRAUDULENT BEGOTTEN JUDGMENT OR JUDGMENTS"

## COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Petty and Alston
Argued by teleconference

KIMBERLY F. NEICE

v.    Record No. 1477-09-3

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
JUNE 8, 2010

COMMONWEALTH OF VIRGINIA

### FROM THE CIRCUIT COURT OF GILES COUNTY
Colin R. Gibb, Judge

Richard L. Chidester (Hartley & Chidester, P.C., on brief), for
appellant.

Richard B. Smith, Special Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Kimberly F. Neice (appellant) appeals from two convictions for indecent exposure, in

violation of Code § 18.2-387. On appeal, appellant contends the evidence was insufficient to

establish that her actions had as their dominant purpose an appeal to the prurient interest in sex.

For the reasons that follow, we agree with appellant and reverse her convictions.

### I. BACKGROUND[1]

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting Commonwealth v.

Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "Viewing the record through this

evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case, and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of this appeal.

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis omitted)).

So viewed, the evidence showed that appellant was a family friend of twelve-year-old L.S., eleven-year-old J.M., and twelve-year-old D.S.[2]  On several occasions, while appellant and the three boys were "joking around," appellant exposed her breasts to the boys.[3]  Appellant told the boys they were babies, lifted up her shirt, and said, "Would you want some of Mama Kim's milk?," "[D.S.] loves my ninnies," or "[D.S.] likes my big boobies."  Sometimes appellant was wearing a bra when she lifted up her shirt and sometimes she was not.  On at least one occasion, she put the boys' heads under her shirt.  These incidents occurred at appellant's residence and J.M.'s parents' residence.  At least one of the boys' parents was present when each incident occurred.

Appellant was charged with three counts of indecent exposure, in violation of Code § 18.2-387.  At appellant's trial, J.M.'s mother testified that the families were always joking and that the boys would "pick at" appellant and appellant would "pick back."  J.M.'s mother stated that "a lot of times [the boys] would come in, wanting to go somewhere and do something[;] . . . they were whining and [appellant] was just referring to them as babies."  She stated that appellant never made any sexual comments to the children.  She further testified that she never told appellant to stop her behavior, but she would say, "Oh Kim, come on," and then try to

_____

[2] The evidence showed that appellant also had a daughter around the same age as the three boys.

[3] L.S. testified that he saw appellant's breasts between ten and fifteen times.  J.M. testified that appellant exposed her breasts several times but he did not know exactly how many times.  D.S. testified that it happened once, but he subsequently described two separate incidents.

- 2 -

change the subject. D.S.'s mother testified that she found nothing inappropriate about appellant's behavior toward her son.

L.S. testified that appellant and the three boys picked on each other a lot. When asked if everyone was "laughing and cutting up" when the exposures occurred, L.S. responded, "Yes." J.M. testified that when the exposures occurred, they were "joking around," as they did frequently. J.M. stated that appellant never said anything of a sexual nature to him. However, the boys said appellant's actions embarrassed them and made them feel uncomfortable.

Appellant admitted to joking with the boys and to pulling up her shirt. She denied that she ever lifted her shirt while she was not wearing a bra. She also denied ever putting the boys' heads under her shirt or saying anything of a sexual nature to any of the children.

The trial court convicted appellant of two counts of indecent exposure, in violation of Code § 18.2-387.[4] This appeal followed.

## II. ANALYSIS

Under well-established principles of appellate review, "[t]he judgment of a trial court . . . will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Morales v. Commonwealth, 31 Va. App. 541, 543, 525 S.E.2d 23, 24 (2000); Code § 8.01-680. The "appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the

_____

[4] Appellant was charged with three counts of indecent exposure, one count regarding her exposure to each child. At the close of the evidence, the trial court sustained appellant's motion to strike the charge of indecent exposure, regarding her actions toward D.S. During his testimony, D.S. admitted that appellant was always wearing a bra when she exposed her breasts to him and the trial court held, "I just don't think there's sufficient evidence to proceed on the charge involving [D.S.]."

- 3 -

crime beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).

Appellant contends the evidence was insufficient to prove she committed indecent exposure in violation of Code § 18.2-387 because the evidence did not establish that her actions had, as their dominant purpose, an appeal to the prurient interest in sex. Code § 18.2-387 states, "Every person who intentionally makes an *obscene* display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor." (Emphasis added).[5] Thus, by its terms, Code § 18.2-387 requires the Commonwealth to prove that appellant's exposure was *obscene*.

"A portrayal of nudity is not, as a matter of law, a sufficient basis for finding that [it] is obscene." Price v. Commonwealth, 214 Va. 490, 493, 210 S.E.2d 798, 800 (1974) (citing House v. Commonwealth, 210 Va. 121, 127, 169 S.E.2d 572, 577 (1969)). What is "obscene" under applicable law has plagued the courts for the last fifty years. In an oft-quoted remark, Justice Potter Stewart noted, "I shall not today attempt further to define the kinds of material I understand to be [obscene] . . . and perhaps I could never succeed in intelligibly doing so. But I know it when I see it . . . ." Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). This quote aptly summarizes the difficulty faced by the Court in obscenity cases.

"'On appeal, we must make an independent determination of the constitutional issue of obscenity, which is a mixed question of law and fact.'" Lofgren v. Commonwealth, 55 Va. App. 116, 119-20, 684 S.E.2d 223, 225 (2009) (quoting Allman v. Commonwealth, 43 Va. App. 104,

---

[5] "Private parts" include not only a person's genitalia, but also one's "'anus, groin, *breast* or buttocks.'" Hart v. Commonwealth, 18 Va. App. 77, 79, 441 S.E.2d 706, 707 (1994) (quoting Code § 18.2-67.10(2)) (emphasis added).

- 4 -

110, 596 S.E.2d 531, 534 (2004)). The Court must examine the particular circumstances of each

case to determine whether an item is obscene. Id. at 121, 684 S.E.2d at 226.

"Obscene" is defined as,

> that which, considered as a whole, has as its dominant theme or
> purpose an appeal to the prurient interest in sex, that is, a shameful
> or morbid interest in nudity, sexual conduct, sexual excitement,
> excretory functions or products thereof or sadomasochistic abuse,
> and which goes substantially beyond customary limits of candor in
> description or representation of such matters and which, taken as a
> whole, does not have serious literary, artistic, political or scientific
> value.

Code § 18.2-372.

> Under this definition, . . . three elements must coalesce: it must be
> established that (a) the dominant theme of the material taken as a
> whole appeals to a prurient interest in sex; (b) the material is·
> patently offensive because it affronts contemporary community
> standards relating to the description or representation of sexual
> matters; and (c) the material is utterly without redeeming social
> value.

House, 210 Va. at 125, 169 S.E.2d at 575; accord Price v. Commonwealth, 213 Va. 113, 115,

189 S.E.2d 324, 326 (1972), vacated and remanded, 413 U.S. 912, aff'd on reh'g, 214 Va. 490,

201 S.E.2d 798 (1974). Appellant challenges the sufficiency of the evidence to prove her actions

had as their dominant theme or purpose a prurient interest in sex.

Defining what constitutes a prurient interest in sex, this Court has held the statute

proscribing indecent exposure may be satisfied when: (1) the defendant admits possessing such

intent, Moses v. Commonwealth, 45 Va. App. 357, 359-60, 611 S.E.2d 607, 608 (2005) (*en

banc*) (affirming the defendant's conviction based in part on his statement that his underlying

motive was "the need to fulfill [his] sex drive"); (2) the defendant is visibly aroused, see

Morales, 31 Va. App. at 542, 525 S.E.2d at 24; Copeland v. Commonwealth, 31 Va. App. 512,

515, 525 S.E.2d 9, 10-11 (2000); or (3) the defendant engages in masturbatory behavior in front

- 5 -

of the victim(s), see Moses, 45 Va. App. at 359, 611 S.E.2d at 608; Morales, 31 Va. App. at 542, 525 S.E.2d at 24; Copeland, 31 Va. App. at 515, 525 S.E.2d at 10-11.

However, the totality of the circumstances may also support an inference that the accused had as his dominant purpose a prurient interest in sex, even if none of these factors is present. In Hart v. Commonwealth, 18 Va. App. 77, 78, 441 S.E.2d 706, 706 (1994), Hart entered an office supply store wearing a "G-string" swimsuit covered by short running shorts. While a store clerk was helping Hart locate an item in the store, Hart pulled down his shorts and asked the clerk what she thought of "the whole picture." Id. at 78, 441 S.E.2d at 706-07. Hart's swimsuit covered his genitals but his pubic area and buttocks were exposed. Id. at 78, 441 S.E.2d at 706. Hart told the store clerk that he liked the Velcro on his shorts because it allowed for "easy access to women who wanted him"; however, he denied purposefully taking off his shorts. Id. at 78, 441 S.E.2d at 707. This Court held that based on Hart's "statements, in conjunction with his actions," "[t]he trial court was entitled to conclude that . . . his actions had as their dominant purpose an appeal to the prurient interest in sex as defined in the Code." Id. at 80, 441 S.E.2d at 707.[6]

In the instant case, the question before us is whether appellant had as her dominant purpose "a shameful or morbid interest in nudity, sexual conduct, sexual excitement, excretory functions or products thereof or sadomasochistic abuse." Code § 18.2-372. If the question before us was whether appellant's conduct was indiscrete, bizarre, inappropriate, or in bad taste,

_____

[6] The Commonwealth also cites Willis v. Commonwealth, No. 0173-04-2, 2005 Va. App. LEXIS 58, at *8 (Feb. 8, 2005), an unpublished opinion, in which Willis, a transvestite, exposed his augmented breasts and buttocks while "parading up and down a street in an area known for illegal prostitution." Willis exposed his body parts on several occasions for an extended period of time, and made no attempt to cover himself. Id. This Court held that "Willis' conduct was both intentional and done with the purpose of 'appealing to the prurient interest in sex.'" Id. (quoting Code § 18.2-372; citing Hart, 18 Va. App. at 79-80, 441 S.E.2d at 707). In both Willis and Hart, the Court noted that there was no explanation for the defendant's behavior other than the defendant engaged in the behavior with a prurient interest in sex.

- 6 -

it would likely be an easier question for us to resolve. However, our inquiry requires a more challenging examination. Accordingly, we consider the evidence as a whole and the statements appellant made in conjunction with her actions.

The uncontroverted evidence showed that appellant's actions, albeit bizarre, were always done in a "joking" manner.[7] Unlike many of the cases in which the defendant's physical behavior indicates a prurient interest in sex exists, appellant did not exhibit the outward signs of sexual interest, such as visible arousal or masturbatory behavior. See Moses, 45 Va. App. at 359, 611 S.E.2d at 608; Morales, 31 Va. App. at 542, 525 S.E.2d at 24; Copeland, 31 Va. App. at 515, 525 S.E.2d at 10-11. Further, unlike Hart, appellant's statements did not irresistibly lead to the conclusion that appellant's actions were sexual in nature. On the contrary, in context, appellant's statement, "Would you want some of Mama Kim's milk?," corroborated the testimony of appellant, the alleged victims, and their parents, that appellant's action was in response to the children's whining, as if they were babies who needed milk. The alleged victims and their parents testified that appellant's other comments,"[D.S.] loves my ninnies," or "[D.S.] likes my big boobies," were made in the same joking context.

The Commonwealth was required to prove, beyond a reasonable doubt and to the exclusion of "every reasonable hypothesis of innocence," Smith v. Commonwealth, 218 Va. 927, 930, 243 S.E.2d 463, 464 (1978), that appellant's actions had as their *dominant* theme or purpose a prurient interest in sex. The evidence, taken as a whole, simply does not exclude the reasonable hypothesis of innocence suggesting that appellant's actions, although indiscriminate,

---

[7] We do not condone appellant's behavior, and we wholeheartedly agree with appellant's concession at trial and on appeal that she exercised poor judgment. Furthermore, this holding is not meant to suggest that actions similar to these in other contexts or those committed in an attempt to be humorous are always committed without a prurient interest in sex. However, under the circumstances of this case, appellant's *indiscretions* did not rise to the level of criminal culpability sufficient to prove *indecency*.

- 7 -

were not criminal in nature. There is no evidence whatsoever to support the conclusion that appellant's dominant purpose in exposing her breasts was sexual in nature, or fostered a shameful or morbid interest in nudity, sexual conduct, or sexual excitement.

Accordingly, under the circumstances of this case, appellant's conduct was not "obscene" as a matter of law. For these reasons, the trial court erred in concluding the Commonwealth proved this element of the offense.

### III. CONCLUSION

For the foregoing reasons, we conclude the evidence was insufficient to prove appellant exposed herself in an obscene manner, and therefore, insufficient to support her convictions for indecent exposure. Accordingly, we reverse appellant's convictions.

Reversed and dismissed.

- 8 -




FROM:

## U.S.W.G.O.

Brian D. Hill - Ally of QANON
310 Forest Street, Apartment 1
Martinsville, Virginia 24112

TO:

Clerk of the Court
U.S. District Court
324 West Market Street, Suite 1
Greensboro, North Carolina 27401

U.S. POSTAGE PAID
PM 2-Day
MARTINSVILLE, VA
24112
OCT 11 '19
AMOUNT

**$7.35**
R2304N117627-13

CERTIFIED MAIL

7019 1120 0001 4751 4580

314
10-12

**UNITED STATES POSTAL SERVICE**

## PRIORITY MAIL

- Date of delivery specified*
- USPS TRACKING™ included to many major international destinations.
- Limited international insurance.
- Pick up available.*
- Order supplies online.*
- When used...

EXPECTED DELIVERY DAY: 10/15/19

USPS TRACKING NUMBER

9505 5104 2593 9284 2784 80

OD:12 1/2 x 9 1/2

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

* Domestic only.    ** For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

Case 1:13-cr-00435-TDS  Document 206-7  Filed 10/15/19  Page 1 of 2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service, October 2018. All rights reserved.

This envelope is made from post-consumer waste. Please recycle - again.

UNITED STATES
POSTAL SERVICE®

PRIORITY
MAIL

TRACKED*
★ ★ ★
INSURED*
★

FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT*

No satanic New World Order
We Are All Qanon
Drain The Swamp
WWG1WGA
JusticeForUSWGO.wordpress.com

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

PS00001000014

* Domestic only.    × For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 4 lbs.

